570 F.2d 1168
 16 Fair Empl.Prac.Cas. 978, 15 Empl. Prac.
Dec. P 8090
James BETHEL, Appellant,
v.
JENDOCO CONSTRUCTION CORPORATION, Navarro Corporation,
Noralco Corporation, Dick Corporation, Graziano Construction
Co., Inc., Martin & Nettrour Contracting Company,
Carpenters' District Council of Western Pennsylvania, United
Brotherhood of Carpenters and Joiners of America, jointly
and severally, Appellees.
 No. 77-1165.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 2, 1977.
Decided Jan. 16, 1978.
As Amended Feb. 1, 1978.
 
 Eileen R. Kalinoski, Dennis S. Shilobod, Messer & Shilobod, Pittsburgh, Pa., for appellant.
 Leonard L. Scheinholtz, John C. Unkovic, Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee companies.
 Michael P. Malakoff, Samuel A. Vitaro, Berger, Kapetan & Malakoff, Pittsburgh, Pa., for Daniel Anderson, amicus curiae.
 Before SEITZ, Chief Judge, GARTH, Circuit Judge, and MEANOR,* District Judge.
 OPINION OF THE COURT
 GARTH, Circuit Judge.
 
 
 1
 James Bethel, a black carpenter, instituted a civil rights action against various companies engaged in the construction business and against certain unions which represent construction workers.[1] Essentially, he complained that the defendants, individually and in concert, engaged in racial discrimination in violation of, inter alia, 42 U.S.C. §§ 1981, 1983, 1985(3), 1986 & 2000e et seq. (Title VII of the 1964 Civil Rights Act).[2] By Order of December 6, 1976, the district court dismissed Bethel's complaint in its entirety against three of the construction companies: Navarro Corporation (Navarro), Noralco Corporation (Noralco), and Martin & Nettrour Contracting Company (Martin & Nettrour).[3] We affirm the district court's dismissal of Bethel's § 1983 claim but we reverse the dismissal of Bethel's other statutory claims which are the subject of this appeal.
 
 I.
 
 2
 Bethel's complaint, as refined by two amendments,[4] was dismissed by the district court pursuant to Fed.R.Civ.P. 12(b)(6) ("failure to state a claim upon which relief can be granted"). This procedural posture at the time of dismissal is significant, in that we take as true all the averments made by Bethel in his complaint.
 
 
 3
 Under such circumstances, we must take all of the well pleaded allegations of the complaint as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any circumstances, the plaintiff might be entitled to any relief.[4] As the Supreme Court admonished in Scheuer v. Rhodes,[5] . . . :
 
 
 4
 4. See, e. g., Conley v. Gibson, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); Polite v. Diehl, 507 F.2d 119, 124 n. 2 (3d Cir. 1974); Quinones v. United States, 492 F.2d 1269, 1273 (3d Cir. 1974); Curtis v. Everette, 489 F.2d 516 (3d Cir. 1973), cert. denied, 416 U.S. 995, 94 S.Ct. 2409, 40 L.Ed.2d 774 (1974); Melo-Sonics Corp. v. Cropp, 342 F.2d 856 (3d Cir. 1965).
 
 
 5
 5. 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974).
 
 
 6
 When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support his claims.[6]
 
 
 7
 6. Id. at 236, 94 S.Ct. at 1686.
 
 
 8
 Helstoski v. Goldstein, 552 F.2d 564, 565 (3d Cir. 1977); accord, Jennings v. Shuman, 567 F.2d 1213, 1216 (3d Cir. 1977). With this principle in mind, we turn to Bethel's complaint.
 
 
 9
 The most relevant sections of the complaint which bear on our discussion of the various statutory claims other than § 1983 read as follows:
 
 
 10
 11. Defendant employers, individually and in concert, acting alone and through their agents, employees and officers, engaged in and continue to engage in racially discriminatory employment practices against plaintiff and other black persons from 1966 to the present, including but not limited to the following practices:
 
 
 11
 (a) Refusing to employ plaintiff as a journeyman carpenter because of his race;
 
 
 12
 (b) Employing plaintiff for only short periods of time, because of his race, and then, for the sole purpose of undertaking the most undesirable duties of a journeyman carpenter, while giving the more desirable jobs to white persons;
 
 
 13
 (c) Laying off plaintiff after completion by plaintiff of the most undesirable jobs of journeyman carpenters and then employing white carpenters to continue in plaintiff's stead, despite their lack of experience, skill, seniority and residence, as compared to plaintiff;
 
 
 14
 (d) Laying off plaintiff, because of his race, while retaining or employing white carpenters despite their lack of skill, experience or seniority as compared to plaintiff;
 
 
 15
 (e) Transferring plaintiff, because of his race, from job site to job site during job inspections by governmental agents investigating defendants' compliance with the aforementioned Equal Employment Opportunities Act, in order to give the false impression that defendants employed black carpenters and/or other craftsmen or tradesmen;
 
 
 16
 (f) Denying plaintiff the opportunity to engage in overtime work because of his race, while granting overtime work to white carpenters, regardless of whether or not they had more or less skill, experience or seniority than plaintiff;
 
 
 17
 (g) Intentionally depriving plaintiff of the opportunity of having among his co-workers, as journeyman carpenters, other members of his own race;
 
 
 18
 (h) Refusing to consider plaintiff or other blacks for supervisory positions within the defendant corporations and in the field because of their race;
 
 
 19
 (i) Denying plaintiff, because of his race, the same on-the-job assistance of other carpenters and other employees as was given to white carpenters;
 
 
 20
 (j) Refusing to recall plaintiff to work after a layoff because of his race, but instead, employing white carpenters of lesser skill, experience and seniority;
 
 
 21
 (k) Conspiring with the defendant labor organizations to discriminate against plaintiff and other black persons in employment practices;
 
 
 22
 (l ) Denying plaintiff full employment because of his race.
 
 
 23
 12. Since 1966, defendant labor organizations, acting alone and in concert with the corporate defendants, and through their agents, employees and officers, engaged in the following racially discriminatory practices against plaintiff and other black persons:
 
 
 24
 (b) Conspiring with the corporate defendants to deny full employment to plaintiff and other black persons;
 
 
 25
 13. Beginning in November, 1974, and continuing to the present, intending to discriminate against plaintiff for asserting his right to be free of racially discriminatory employment practices and employment opportunities, and to punish him for asserting such rights and for filing complaints against Jendoco Construction Corporation, Navarro Corporation, Noralco Corporation, Graziano Construction Company, Inc., Carpenters' District Council of Western Pennsylvania, and United Brotherhood of Carpenters and Joiners of America with the Equal Employment Opportunity Commission and the Human Relations Commission of the City of Pittsburgh, Commonwealth of Pennsylvania, the defendants conspired among themselves to deprive plaintiff of fair employment opportunities; furthermore, they have denied him employment opportunities as a journeyman carpenter; in addition, they have intentionally, wilfully, maliciously and wickedly, acting through their supervisory personnel, deprived plaintiff full employment, harassed plaintiff on job sites, (and) made disparaging comments about plaintiff because of his assertion of such rights. . . .
 
 
 26
 14. Each defendant, conspiring with the other defendants, through its agents, officers and employees, from 1966 to the present, has gone upon the premises of persons owning real estate for the purpose of then and there carrying out construction activities and for the purpose, incidental thereto, of continuing to deprive plaintiff and other black persons, directly or indirectly, of the equal protection of the laws of the Commonwealth of Pennsylvania and the United States of America which grant plaintiff full and equal employment opportunities, and this, each and everyone of the defendants herein has done in violation of the terms of 42 U.S.C. 1985(3).
 
 
 27
 15. Defendants, and each of them, through their individual agents, employees and officers, had knowledge of the wrongs conspired to be done and done by their own agents, employees and officers and by their subdivisions and by and with the other defendants, in depriving plaintiff and other black persons of their right to be free of racially discriminatory employment practices, and having power to prevent or aid in preventing such acts, neglected and refused to prevent such wrongful acts, in violation of 42 U.S.C. 1986, and are, therefore, liable to plaintiff under the terms of said act.
 
 
 28
 16. As a direct and proximate result of the aforementioned acts of the defendants, acting individually and/or in concert, plaintiff has suffered and will suffer mental anguish and humiliation, public scorn and derision, and damaged reputation; he has lost and will continue to lose large sums of money because of a lack of full and fair employment; and he has been denied the full and fair fruits of his membership in the labor organizations.
 
 
 29
 51. In retaliation for plaintiff having commenced this civil rights action, all defendant corporations have knowingly and intentionally refused to hire plaintiff since the action was filed, despite repeated applications made to the offices and job sites of each and every corporate defendant between September, 1975 and March, 1976, and plaintiff believes, and therefore avers, that said corporations have entered into an agreement with the defendant-union to attempt to deprive plaintiff of the means of making a livelihood in order to punish plaintiff. . . .
 
 
 30
 52. Plaintiff believes, and therefore avers, that since plaintiff filed a complaint with the E. E. O. C., representatives of defendant corporations have met together to coordinate their handling of plaintiff and have orally agreed not to hire plaintiff despite the fact that they have not employed black carpenters, in order to impose sanctions upon plaintiff for asserting his rights to equal employment opportunities.
 
 II.
 CLAIMS UNDER §§ 1985(3) AND 1986
 
 31
 To come within the purview of 42 U.S.C. § 1985(3),[5] Bethel's complaint was required to allege four matters:(1) a conspiracy;
 
 
 32
 (2) for the purposes of depriving another (Bethel) of equal protection or equal privileges and immunities;
 
 
 33
 (3) any act in furtherance of the conspiracy committed or caused to be committed by a conspirator;
 
 
 34
 (4) whereby another (Bethel) was injured in his or her person or property or deprived of a right or privilege as a United States citizen.
 
 
 35
 Griffin v. Breckenridge, 403 U.S. 88, 102-03, 91 S.Ct. 1790, 29 L.Ed.2d 338 (1971).
 
 
 36
 In the preceding, excerpted paragraphs of Bethel's complaint, Bethel has clearly and unequivocally alleged a cause of action under § 1985(3). He has alleged with sufficient concreteness the four elements specified in the statute and required under Griffin v. Breckenridge. Moreover, Bethel alleges "specific facts" of discrimination,[6] see, e. g., Complaint PP 11, 13, as well as of a conspiracy,[7] see, e. g., id. PP 13, 14, 51. Finally, in alleging race-based discrimination, the complaint clearly charges that Bethel was a victim of "invidious, purposeful and intentional discrimination between classes or individuals." Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir.) (emphasis added), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972).
 
 
 37
 The district court, in dismissing Bethel's § 1985(3) claim, relied upon Robinson v. McCorkle, supra. That reliance was misplaced, as Robinson is completely distinguishable from the case at bar. In Robinson, this Court upheld the district court's dismissal of Robinson's claim, holding that Robinson's conspiracy allegations were "unsupported by any specific facts," that his complaint "fail(ed) to make a sufficient showing under 42 U.S.C. § 1985(3) that (he) was denied equal protection of the law," and, more generally, that the complaint contained no more than "mere conclusory allegations of deprivations of constitutional rights." 462 F.2d at 113. Here, by contrast, even a cursory reading reveals that Bethel's complaint is replete with specific allegations of race-based discrimination[8] conduct proscribed by the Constitution and the remedy for which is provided by the very statute which Bethel invokes. Accepting as true for the purposes of this motion the allegations found in Bethel's complaint, we hold that the district court erred in dismissing Bethel's § 1985(3) claim, thereby preventing him from "offer(ing) evidence to support his claims." Helstoski v. Goldstein, supra, 552 F.2d at 565.
 
 
 38
 Having held that Bethel should be permitted to pursue his § 1985(3) claim, it is apparent that he must also be permitted to produce, if he can, the evidence supporting his § 1986 claim,[9] which claim had been dismissed by the district court. Cf. Griffin v. Breckenridge, supra; Robinson v. McCorkle, supra.
 
 III.
 CLAIM UNDER § 1981
 
 39
 Section 1981 of Title 42, United States Code, provides that "(a)ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . as is enjoyed by white citizens." Challenges to racial discrimination in private employment may be brought under § 1981. Johnson v. Railway Express Agency, Inc., 421 U.S. 454, 459-60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975); Young v. International Telephone & Telegraph, 438 F.2d 757, 759 (3d Cir. 1971). Hence § 1981 would furnish redress for Bethel against the discriminatory acts alleged in his complaint, if proven, and the district court properly so held. See Bethel v. Jendoco Construction Corp., Civ. Action No. 76-57, at 11 (W.D.Pa. Dec. 6, 1976) (A33, A43).
 
 
 40
 However, the district court, in rejecting a six year statute of limitations argument, also held that the applicable statute of limitations for a § 1981 claim asserting racial discrimination in employment is two years. The district court then found that Bethel failed to allege any violations by Noralco, Navarro, or Martin & Nettrour within the applicable two-year time period, and thereupon dismissed Bethel's § 1981 claims against these three defendants.
 
 
 41
 Under Fed.R.Civ.P. 8(c), the statute of limitations constitutes an affirmative defense to an action. Under the law of this and other circuits, however, the limitations defense may be raised on a motion under Rule 12(b)(6), but only if "the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations." Hanna v. United States Veterans' Administration Hospital, 514 F.2d 1092, 1094 (3d Cir. 1975) (emphasis added); accord Herron v. Herron, 255 F.2d 589, 593 (5th Cir. 1958) ("(t)here is general agreement . . . that even the defenses of limitations or laches may be asserted by motion to dismiss for failure to state a claim provided that the complaint shows affirmatively that the claim is barred"); Panhandle Eastern Pipe Line Co. v. Parish, 168 F.2d 238, 240 (10th Cir. 1948); Burkhardt v. Liberty, 394 F.Supp. 1296, 1298 (W.D.Pa.1975), aff'd, 530 F.2d 963 (3d Cir. 1976) (without published opinion); 2A J. Moore, Moore's Federal Practice P 9.07, at 1963 (2d ed. 1974); see Currier v. Knapp, 442 F.2d 422, 423 (3d Cir. 1971) (per curiam) (statute of frauds, as an affirmative defense, must "be set forth affirmatively by a party pleading to a preceding pleading" and was improperly entertained under a Rule 12(b)(6) motion).[10] If the bar is not apparent on the face of the complaint, then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6).
 
 
 42
 Here the complaint does not satisfy the exception which would permit disposition pursuant to 12(b)(6) motion, for it is apparent that the time limitations alleged on the face of the complaint do not bar Bethel's § 1981 charges. Bethel complains that the defendants' discriminatory acts continue "to the present." E. g., Complaint PP 11, 13, 14; see, e. g., id. PP 51, 52. See also n. 14 infra. Thus the district court could not properly dismiss these claims on a Rule 12(b)(6) motion, for if Bethel's assertions are true, as we are obliged to presume they are at this stage, each of the discriminatory acts, by having been continued to the date of the filing of the complaint, would necessarily escape the bar of any statute of limitations.[11]
 
 IV.
 TITLE VII CLAIM
 
 43
 Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., was enacted to assure equality of employment opportunities through elimination of discrimination based on race, color, religion, sex, or national origin. Johnson v. Railway Express Agency, supra, 421 U.S. at 457, 95 S.Ct. 1716; Alexander v. Gardner-Denver Co., 415 U.S. 36, 44, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974). "It creates statutory rights against invidious discrimination in employment." Johnson v. Railway Express Agency, supra, 421 U.S. at 457-58, 95 S.Ct. at 1719.
 
 
 44
 In its December 6th and December 22nd Orders, the district court dismissed Bethel's Title VII claim against Navarro.[12] The court ruled that Bethel stated only that Navarro discharged him in 1973: hence his complaint did not allege a specific discriminatory act by Navarro within the 180-day time period prior to his filing of a complaint with the Equal Employment Opportunity Commission (EEOC) on March 21, 1975.[13] Our preceding discussion concerning Bethel's § 1981 claim is pertinent here. Inasmuch as Bethel has alleged violations of Title VII by Navarro which continue "to the present," it was error to consider this complaint as time-barred without proofs to support such a finding.
 
 
 45
 In P 32 of his complaint, Bethel alleges not only that Navarro discharged him in 1973 but also that "(d)espite multiple job applications by plaintiff, defendant Navarro Corporation refused to hire plaintiff before September, 1973, or after November 16, 1973, because of his race, and has employed few or no other black persons as a carpenter for at least the past eleven (11) years" (emphasis in original). Furthermore, Bethel alleged that Navarro employs "continuing racially discriminatory employment practices," id., and that the defendants' discriminatory practices have persisted "to the present," id. PP 11, 13, 14. Taking as true these allegations of the complaint, Helstoski v. Goldstein, supra, 552 F.2d at 565, it is apparent that Bethel has alleged Title VII violations by Navarro which continued to the filing of the charge with the EEOC and which therefore must have occurred within the requisite 180-day time period provided in 42 U.S.C. § 2000e-5(e).[14] See Cox v. United States Gypsum Co., 409 F.2d 289, 290-91 (7th Cir. 1969). Whether or not Bethel can substantiate these assertions by proof remains to be seen. On this record, however, and at this stage of the proceeding, he may not be precluded from trying.
 
 V.
 SECTION 1983
 
 46
 Section 1983 of Title 42 provides a cause of action against any party who "under color of" state law, deprives another of rights or privileges secured by the Constitution or by federal statute. The crucial question here, of course, is whether the alleged discrimination of appellees three construction companies occurred under color of state law.
 
 
 47
 Bethel's allegations pertinent to his claim are limited to an assertion that the defendants received large amounts of public funds for constructing projects for the government, Complaint PP 32, 43, 44, and that:All defendants operate under color of local, state and federal laws in that a substantial portion of each defendant employer's income is derived from construction projects financed in whole or in part by local state and/or federal governmental agencies and in that the defendant labor organizations knowingly provide carpenters and other skilled craftsmen to the defendant employers and other employers located in Western Pennsylvania who engaged in such governmentally financed construction projects. In addition, said defendant labor organizations and said employer defendants exist as legal entities solely as a result of and under the protection and promotion of governmental statutes, ordinances and regulations and under the custom and usage of the local, state and federal governments within the meaning of 42 U.S.C. 1983.
 
 
 48
 Id. P 6. In effect, Bethel posits that the defendants' connection with the state is two-fold: (1) the defendant companies receive a portion of their income from projects financed in whole or in part by state governmental agencies, while the defendant labor organizations supply skilled craftsmen to those defendants and other such companies; and (2) the defendants exist and are "protect(ed) and promot(ed)" as "legal entities" (as corporations, presumably) by virtue of government statutes and regulation.
 
 
 49
 In determining whether the involvement of the appellee companies rises to the level of state action,
 
 
 50
 "the inquiry must be whether there is a sufficiently close nexus between the State and the challenged action . . . so that the action of the latter may be fairly treated as that of the State itself," Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 453, 42 L.Ed.2d 477 (1975), citing Moose Lodge No. 107 v. Irvis, 407 U.S. 163, 176, 92 S.Ct. 1965, 32 L.Ed.2d 627 (1972), or whether the "State has so far insinuated itself into a position of interdependence with (the defendants) that it must be recognized as a joint participant in the challenged activity." Burton v. Wilmington Parking Authority, 365 U.S. 715, 725, 81 S.Ct. 856, 862, 6 L.Ed.2d 45 (1961).
 
 
 51
 Hollenbaugh v. Carnegie Free Library, 545 F.2d 382, 383 (3d Cir. 1976).[15] In light of the allegations of plaintiff's complaint, we conclude that he has failed to state a claim under 42 U.S.C. § 1983 against the defendant companies involved in this appeal.
 
 
 52
 First, Bethel has nowhere alleged the existence of a connection between the government's funding and regulation of defendants, on the one hand, and the defendants' discriminatory conduct on the other. See Jackson v. Metropolitan Edison Co., 419 U.S. 345, 351, 95 S.Ct. 449, 42 L.Ed.2d 477 (1974). Second, plaintiff's allegations that the defendant companies derive a substantial portion of their income from construction projects financed in whole or in part by state governmental agencies, without more, are insufficient under Burton v. Wilmington Parking Authority, 365 U.S. 715, 81 S.Ct. 856, 6 L.Ed.2d 45 (1961) to state a claim upon which relief can be granted against a private company under 42 U.S.C. § 1983.
 
 
 53
 As we have recently held, the "receipt of money from the state is not, without a good deal more, enough to make the recipient an agency or instrumentality of the Government." Hollenbaugh v. Carnegie Free Library, supra, 545 F.2d at 385, quoting Grossner v. Trustees of Columbia University, 287 F.Supp. 535, 547-48 (S.D.N.Y.1968). Moreover, "(t)he mere fact that a business is subject to state regulation does not by itself convert its action into that of the State for purposes of the Fourteenth Amendment." Jackson v. Metropolitan Edison Co., supra, 419 U.S. at 350, 95 S.Ct. at 453. "Nor does the fact that the regulation is extensive and detailed . . . do so." Id. In short, even taking as true Bethel's "funding" and "regulation" allegations, his complaint is nevertheless insufficient to bring the defendant companies' conduct within the purview of § 1983. Thus, the district court did not err in granting the defendants' 12(b)(6) motion to dismiss Bethel's § 1983 claim.
 
 VI.
 
 54
 In sum, we hold only that in the procedural posture of this case, where all allegations of the complaint are to be taken as true for purposes of testing the defendants' motion made pursuant to Rule 12(b)(6), we will affirm the district court's dismissal of Bethel's § 1983 claim, and we will reverse and remand to the district court for further proceedings pertaining to those claims brought under 42 U.S.C. §§ 1981, 1985(3), 1986, and 2000e et seq. (Title VII). We express no view as to the merits of these latter claims.
 
 
 
 *
 Honorable H. Curtis Meanor, United States District Court for the District of New Jersey, sitting by designation
 
 
 [1]
 Defendants sub judice include Jendoco Construction Corporation, Navarro Corporation, Noralco Corporation, Graziano Construction Company, Inc., Dick Corporation, Martin & Nettrour Contracting Company, Carpenters' District Council of Western Pennsylvania and United Brotherhood of Carpenters and Joiners of America
 
 
 [2]
 Bethel also alleged violations of 42 U.S.C. § 1982 and Executive Order No. 11246, and asserted claims alleging common law libel and slander. The district court's dismissal of these claims is not before us on this appeal
 
 
 [3]
 On December 22, 1976, the district court certified, pursuant to Fed.R.Civ.P. 54(b), that there was no just reason for delay and entered final judgment on its December 6th Order dismissing Bethel's complaint against defendants Navarro, Noralco, and Martin & Nettrour. The December 22nd Order is the subject of this appeal and, by reason of the district court's 54(b) certification, is properly reviewable by us. 28 U.S.C. § 1291
 
 
 [4]
 Each paragraph in all of the three documents is successively numbered. We therefore refer to the original and the two amendments thereto as the "complaint."
 
 
 [5]
 42 U.S.C. § 1985(3) reads as follows:
 If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . .
 (and) in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages, occasioned by such injury or deprivation, against any one or more of the conspirators.
 
 
 [6]
 Robinson v. McCorkle, 462 F.2d 111, 113 (3d Cir.), cert. denied, 409 U.S. 1042, 93 S.Ct. 529, 34 L.Ed.2d 492 (1972)
 
 
 [7]
 See Robinson v. McCorkle, supra, 462 F.2d at 113
 
 
 [8]
 See Complaint PP 11-15, 51, 52, quoted supra
 
 
 [9]
 Section 1986 of Title 42, United States Code, provides:
 Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented . . . .
 
 
 [10]
 Certain cases from this Circuit have stated that an affirmative defense may be raised "either by motion to dismiss or in the answer." Hartmann v. Time, 166 F.2d 127, 131 n. 3 (3d Cir.), cert. denied, 334 U.S. 838, 68 S.Ct. 1495, 92 L.Ed. 1763 (1948); see Williams v. Murdoch, 330 F.2d 745, 749 (3d Cir. 1964) (defense of res judicata may be asserted in a Rule 12(b)(6) motion "if it (is) valid"). These statements are correct insofar as they recognize, as does Williams v. Murdoch, that an affirmative defense may be raised on a 12(b) (6) motion if the predicate establishing the defense is apparent from the face of the complaint
 
 
 [11]
 Because of our disposition of Bethel's § 1981 claim we find it unnecessary to decide whether, on the facts and proceedings of this case, the applicable statute of limitations period for Bethel's § 1981 action is two or six years
 
 
 [12]
 In an Order dated June 2, 1976, the district court had dismissed Bethel's Title VII claims against Noralco and Martin & Nettrour because Bethel had not filed charges against these companies with the Equal Employment Opportunity Commission. See Opinion of June 2, 1976, at 5. The June 2d Order is not before us on this appeal
 
 
 [13]
 See 42 U.S.C. § 2000e-5(e), which provides that
 (a) charge under this section shall be filed (with the EEOC) within one hundred and eighty days after the alleged unlawful employment practice.
 
 
 [14]
 We acknowledge the ambiguity of Bethel's allegations as to actual violations which occurred within the crucial 180-day period. However, accepting his allegation of violations "continually" occurring "to the present," and that Navarro has "refused to hire (him) . . . after November 16, 1973 because of his race," Complaint P 32, and recognizing our adherence to notice pleading under the Federal Rules of Civil Procedure, we have little hesitation in ruling that he has alleged a cause of action for racial discrimination so as to withstand an adverse determination on a motion under Rule 12(b)(6)
 
 
 [15]
 In addition to this category concerning the state's significant involvement with a private party, quoted above, the two other categories of state action which we have recognized are "where state courts enforced an agreement affecting private parties," and "where there was private performance of a government function." Hollenbaugh v. Carnegie Free Library, supra, 545 F.2d at 383, quoting Magill v. Avonworth Baseball Conference, 516 F.2d 1328, 1331 (3d Cir. 1975). As in Hollenbaugh and in Magill, we are not here concerned with either of these two categories