**SIMMONS OIL CORPORATION,**
Plaintiffs,

v.

**BULK SALES CORPORATION,**
Defendant.

Civ. No. 80–1124.

United States District Court,
D. New Jersey.

Sept. 3, 1980.

**458**

Lowen & Abut, Fort Lee, N. J., for plaintiff.

Norris, McLaughlin & Marcus, Somerville, N. J., for defendant.

## OPINION

LACEY, District Judge.

This is a breach–of–contract action brought by Simmons Oil Corporation (Simmons), an Arizona corporation, against Bulk Sales Corporation (Bulk Sales), a New Jersey corporation. Jurisdiction is based on diversity. 28 U.S.C. § 1332(a) and (c) (1976). Defendant moves to dismiss the complaint for failure to state a claim under Fed.R.Civ.P. 12(b)(6), because of plaintiff's alleged failure to comply with the New Jersey statute of frauds. 12A N.J.Stat. Ann. § 2–201 (West 1962).

The complaint charges that on May 25, 1979, Simmons and Bulk Sales concluded an oral sales contract under which Simmons agreed to sell and Bulk Sales agreed to buy 25,000 barrels of leaded, regular–grade gasoline at a price of $1.22 per gallon. Complaint ¶ 8. In addition, at the time of contracting the parties agreed to memorialize the contract by exchanging telex messages the next working day, May 29, 1979. In accordance with this agreement, on May 29 Simmons sent a confirming telex to Bulk Sales setting forth the terms of the contract. Complaint ¶ 9; see Exhibit A, attached to Complaint. The following day, May 30, Bulk Sales sent Simmons a telex message that referred to Simmons' confirmation and proposed revision of the payment terms, describing those terms as "not acceptable." Complaint ¶ 11; see Exhibit B, attached to Complaint. Following Simmons' receipt of the Bulk Sales telex, representatives of both parties discussed the payment terms and attempted to resolve them. Complaint ¶ 12. On June 1, 1979, Simmons sent a second telex to Bulk Sales, agreeing to the barge-delivery payment term proposed in the Bulk Sales telex of May 30, but again requesting, in the event of a book transfer, Bulk Sales' agreement to the terms of the Simmons telex of May 29. Id.; see Exhibit C, attached to Complaint. At this point, apparently, Bulk Sales remained silent. On June 22, 1979, when Simmons contacted Bulk Sales to determine when Bulk Sales intended to nominate barges to accept delivery of the purchased gasoline, Bulk Sales told Simmons that it did not recognize any binding contract. Complaint ¶ 13.

Simmons continued sending telexes. In a June 22, 1979, telex from Simmons to Bulk Sales, Simmons recounted the history of the sales transaction, offered to assist Bulk Sales in arranging a barge nomination or book transfer, and requested timely notification of Bulk Sales' barge nomination. Complaint ¶ 14. Then on June 25, 1979, Simmons sent a telex message to Bulk Sales advising it that given the approaching "lift gate" deadline of June 28, 1979, and Bulk Sales' continued refusal to nominate barges to accept delivery, Simmons would be forced to protect itself by offering the gasoline for sale at its current market value unless promptly notified by Bulk Sales of its intention to honor its alleged purchase agreement. See Complaint ¶ 15.

By telex of June 26, 1979, Bulk Sales formally advised Simmons that it recog-

nized no binding agreement with Simmons and that any action taken by Simmons was on its own account. Simmons then sought other buyers. Complaint ¶ 16.

On July 3, 1979, Simmons sold the gasoline that it alleges Bulk Sales had agreed to buy at $1.22 per gallon to Amerada Hess Corporation at the "then prevailing market price" of $0.90 per gallon.

Plaintiff seeks damages for breach of the alleged contract of May 29, these damages to include the difference between the contract price and cover price, together with interest, "various incidental expenses as allowed by law," "such equitable relief as necessary to prevent injustice," and costs and attorneys' fees.

As indicated, defendant argues in support of its motion to dismiss that even if there were an oral contract formed on May 29, 1979, that contract is not enforceable under the New Jersey statute of frauds, 12A N.J. Stat.Ann. § 2–201 (West 1962). For the reasons set forth below, however, defendant's motion will be denied.

### DISCUSSION

The New Jersey statute of frauds provides:

12A:2–201. Formal Requirements; Statute of Frauds.

(1) Except as otherwise provided in this section a contract for the sale of goods for the price of $500 or more is not enforceable by way of action or defense unless there is some writing sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought or by his authorized agent or broker. A writing is not insufficient because it omits or incorrectly states a term agreed upon but the contract is not enforceable under this paragraph beyond the quantity of goods shown in such writing.

(2) Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable

(a) if the goods are to be specially manufactured for the buyer and are not suitable for sale to others in the ordinary course of the seller's business and the seller, before notice of repudiation is received and under circumstances which reasonably indicate that the goods are for the buyer, has made either a substantial beginning of their manufacture or commitments for their procurement; or

(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted; or

(c) with respect to goods for which payment has been made and accepted or which have been received and accepted (12A:2–606).

12A N.J.Stat.Ann. § 2–201 (West 1962).

Defendant contends that plaintiff has offered no writing "sufficient to indicate that a contract for sale has been made between the parties and signed by the party against whom enforcement is sought" as required by section 2–201(1). Nor, defendant argues, do any of the remaining subsections of 2–201 remove the alleged contract from the purview of the statute. Subsection 2–201(2), the subsection referring to confirmations and the only other subsection possibly applicable here, permits a confirmation to satisfy the statute only if objection to its contents is not given within ten days; and, defendant suggests, the Bulk Sales telex of May 30, which states that "the payment clause [of Simmons' May 29 telex] is not acceptable," is plainly a sufficient objection under the statute.

Plaintiff argues that it is "the settled law of the Third Circuit that the Statute of Frauds may only be pleaded by answer," Plaintiff's Brief in Opposition to Defendant's Motion to Dismiss Complaint at 4 [hereinafter Plaintiff's Brief], citing *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168 (3d Cir. 1978); *Hanna v. United States Veterans Administration Hospital*, 514 F.2d 1092 (3d Cir. 1975); and *Currier v. Knapp*, 442 F.2d 422 (3d Cir. 1971). "The law is so clear," plaintiff states, "that further elaboration beyond the cited authority is unnecessary." Plaintiff's Brief 4. Unfortunately for plaintiff, while the law of this circuit may be as clear as it contends, the substance of that law is somewhat different than it believes. *Bethel* and *Hanna* do not stand for the position plaintiff advances, and *Currier* is plainly distinguishable.

■ *Bethel* and *Hanna*, both cases involving motions to dismiss under Fed.R. Civ.P. 12(b)(6), based on applicable statutes of limitations, stand for the proposition that a motion to dismiss can indeed be brought under rule 12 when the complaint on its face "shows that the cause of action has not been brought within the statute of limitations." *Hanna v. United States Veterans Administration Hospital*, 514 F.2d at 1094. *See Bethel v. Jendoco Construction Corp.*, 570 F.2d at 1174. *See also, Leone v. Aetna Casualty & Surety Co.*, 599 F.2d 566, 567 n.1 (3d Cir. 1979); *Gee v. CBS, Inc.*, 471 F.Supp. 600, 635 (E.D.Pa.1979); *Vera v. Bethlehem Steel Corp.*, 448 F.Supp. 610, 611 (M.D.Pa. 1978); *Burkhardt v. Liberty*, 394 F.Supp. 1296, 1298 (M.D.Pa.1975); 2A Moore's Federal Practice ¶ 9.07, at 9–50 (2d ed. 1979). Plaintiff is correct, however, in the suggestion implicit in its citation of *Bethel* and *Hanna*, that the statute of frauds provides a bar analogous to that of the statute of limitations. And plaintiff's complaint raises a statute–of–frauds bar on its face: The complaint refers specifically to the "oral sales contract," Complaint ¶ 8, and the "oral contract," *id.* at ¶ 11.

*Currier v. Knapp, supra*, a per curiam decision by the Court of Appeals for the Third Circuit and the third case cited by plaintiff, does in fact hold that the statute of frauds is an affirmative defense, which, in that case, had to be raised by answer to the complaint. 442 F.2d at 423. In *Currier*, however, the basis for the rule 12(b)(6) motion was that the complaint did not allege the existence of a writing signed by defendants, not, as here, that the complaint specifically referred to an oral contract. Moreover, in an earlier decision the court of appeals discussed permitting the statute of frauds to be raised on motion to dismiss, rather than as an affirmative defense, where a defect inhering because of the requirements of the statute appears on the face of the pleading; the court concluded that "[t]his view appears to be sound logically and certainly seems to be the better practice." *Continental Collieries v. Shober*, 130 F.2d 631, 635–36 (3d Cir. 1942).

■ Plaintiff argues, in addition, that defendant should be required to file an answer, before raising the statute of frauds as a defense, on the chance it will admit the existence of the alleged contract, thereby removing the statute as a bar under subsection 2–201(3)(b). This contention is without merit. Such a result would vitiate the statute. It is not necessary to finally reach this result, however, because defendant's motion must, in any event, be denied.

Assuming defendant properly raises the statute of frauds as grounds for its motion to dismiss under rule 12, the inquiry does not stop here in light of the Court of Appeals for the Third Circuit's recent decision in *Leone v. Aetna Casualty & Surety Co., supra*. In *Leone*, the court held that a statute of limitations defense could be raised on a motion to dismiss, but added this caveat: "The question to be answered thus becomes whether the assertions of the complaint, given the required broad sweep [of *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)], would permit adduction of proofs that would provide a recognized legal basis for avoiding the statutory bar." 599 F.2d at 567.

On this question, plaintiff raises a number of intriguing, and somewhat novel, arguments, including (1) defendant's May 30

telex is sufficient to satisfy 12A N.J.Stat. Ann. § 2–201(1) (West 1962) and, if not, the May 30 telex meets subsection 2–201(2) of the statute; (ii) section 2–201(3), regarding admissions, should preclude dismissal until after all evidence is in at trial; and (iii) the doctrine of promissory estoppel should prevent defendant from raising the statute as a defense. Not all of these arguments need be considered, because defendant's telex of May 30 precludes dismissal under subsection 2–201(2) of the statute.[1]

To restate, section 2–201(2) provides:

> Between merchants if within a reasonable time a writing in confirmation of the contract and sufficient against the sender is received and the party receiving it has reason to know its contents, it satisfies the requirements of subsection (1) against such party unless written notice of objection to its contents is given within ten days after it is received.

12A N.J.Stat.Ann. § 2–201(2) (West 1962).

I hold that the May 30 telex is not a sufficient objection under this section. The telex reads in full:

> WITH REFERENCE TO YOUR TELEX OF 5/29/79, PLEASE BE ADVISED THAT THE PAYMENT CLAUSE IS NOT ACCEPTABLE AND WE SUGGEST THE SUBSTITUTION OF A MORE APPROPRIATE AND CONVENTIONAL CLAUSE.
>
> IT WILL SHOW. . . .
>
> PAYMENT: IF BARGE, BY WIRE TRANSFER OF FEDERAL FUNDS IMMEDIATELY UPON RECEIPT OF TELEXED INVOICE AND INDEPENDENT INSPECTORS REPORT.
>
> IF BOOK TRANSFER, BY IMMEDIATE TRANSFER OF FEDERAL FUNDS UPON RECEIPT OF CONFIRMATION THAT BOOK TRANSFER HAS BEEN COMPLETED.

> PLEASE ADVISE PROMPTLY WHETHER THIS CHANGE IS ACCEPTABLE SO THAT WE MAY CONSIDER THIS A FIRM TRANSACTION.

Exhibit B, *attached to* Complaint.

Although defendant argues this constitutes sufficient objection to plaintiff's May 29 telex, that argument must be rejected: The telex volunteers too much. The terms of the May 29 telex, which detail the alleged contract, are incorporated by reference, *see Keller v. Homan*, 136 N.J.Eq. 228, 41 A.2d 17 (1945), and defendant's objection, the "so that we may consider this a firm transaction" language notwithstanding, is to but a portion of the confirmation. Professor Williston has written:

> As to what constitutes a "notice of objection" which would meet the requirements of the statute, there is some concern. Because of the duty of higher care imposed upon merchants, it would seem that anything less than unequivocal response to the written confirmation would not meet the requirement of an objection in writing to the confirmation. Qualification of the objection in any manner would raise the specter of the party promoting the existence of the contract being able to rely upon the fact that since the objecting merchant objected only to the qualified portion, he was admittedly accepting all other portions of the written confirmation.

2 Williston on Sales § 14–8, at 285 (4th ed. 1974).

Other commentators share this view. Advising on the form that an objection should take, Duesenberg and King state:

> The objection, if it volunteers too much, may itself amount to a satisfactory memorandum. The simplest advice to follow

---

1. I note that, ordinarily, one of the first questions to be considered would be whether the telexes between the parties created a contract under 12A N.J.Stat.Ann. § 2–207 (West 1962), the "Additional Terms in Acceptance of Confirmation" section of the code, because the complaint contains references not only to the "oral contract" but to the telexes as well–at least one of which is styled as a "confirmation." *See* Complaint, *passim*. This examination is precluded, however, by plaintiff's concession that it is not making an argument that a contract was formed under section 2–207: "The Complaint does not allege, and plaintiff does not contend, that the attachments in and of themselves constitute a written contract." Plaintiff's Brief at 5.

would be to send a brief, concise statement acknowledging receipt of the purported confirmation and denying either its content or that any contract was entered. . . . Even a lone reference to price may give basis for the confirming merchant to contend that there was in truth a bargain and that oral evidence should be admitted to prove it. The minimization of what is required for an effective memorandum makes it exceedingly unwise to do otherwise than dispatch an unequivocal denial of all the content of the confirmation.

R. Duesenberg & R. King, Sales & Bulk Transfers Under the Uniform Commercial Code, in 3 Bender's Uniform Commercial Code Serv. § 2.04[2], at 2–78 (rev. perm. ed. 1980). See, Comment, An Anatomy of Sections 2–201 and 2–202 of the Uniform Commercial Code (the Statute of Frauds and the Parol Evidence Rule), 4 B.C.Indus. & Com.L.Rev. 381, 386–87 (1962) ("anything less than an unqualified objection may testify to the reality of the transaction and the objecting party's connection to it").

Moreover, at least one other federal court, on facts plainly analogous to this case, has adopted a similar view:

The court believes that if no oral transaction had occurred, Perdue, after receiving [the confirmation], would have sent a short note denying the existence of such a purchase. The letter and mailgram are not such a denial and do not qualify as a written notice of objection.[2]

*Perdue Farms, Inc. v. Motts, Inc.*, 459 F.Supp. 7, 22 (D.Miss.1978).

■ Finally, defendant has cited no cases to counter this argument, but merely contends that the authorities just cited hold merchants to too high a standard. I do not agree. In fact, immediately following this assertion, defendant states:

[I]t is apparent from [the May 30 telex] that the payment clause was sufficiently material to Bulk that it considered no agreement whatsoever to have been reached in the absence of an agreement on a satisfactory form of payment clause. In effect Bulk is saying, "Your proposed payment clause is not what we discussed on May 25; if this is what you had in mind, then we do not have an agreement."

Defendant's Supplemental Brief in Support of its Notice of Motion to Dismiss Complaint at 7. This language plainly suggests that *some* payment clause was discussed on May 25, and that defendant thought the parties had an agreement, albeit one containing different payment terms than plaintiff contends. Moreover, under the code a contract for sale does not fail for indefiniteness "though one or more terms are left open." 12A N.J.Stat.Ann. § 2–204(3) (West 1962).

### CONCLUSION

Plaintiff will now have an opportunity to prove the existence and terms of the alleged oral contract. "The statute of frauds was not designed to protect a party who made an oral contract, but rather to aid a party who did not make a contract, though one is claimed to have been made orally with him." *Cohn v. Fisher*, 118 N.J.Super. 286, 296, 287 A.2d 222, 227. (Law Div.1972).

---

**2.** The message in Perdue's mailgram and letter was identical and read as follows:

On November 18, 1975, we received your Confirmation and Purchase . . . purportedly referring to the purchase of eight (8) loads of fresh trim roasters. As our credit representative advised you . . . credit terms are not available . . . . Since you have not responded to our invitation to make advance cash sales, the previous proposed purchase was automatically cancelled.

*Perdue Farms, Inc. v. Motts, Inc.*, 459 F.Supp. 7, 21 n.31 (D.Miss.1978).