Meyer, J.
(dissenting). Subdivision (d) of section 8-319 of the Uniform Commercial Code excepts from its proscription against enforcement of an oral contract “A contract for the sale of securities * * * [as to which] the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.” Neither the language of that provision nor the history of its adoption, nor its interpretation by the courts of this or other States warrants or sustains the construction of it which the majority espouses. To the contrary, the direction of subdivision (1) of section 1-102 that the Code “be liberally construed and applied to promote its underlying purposes and policies”, one of which is “to make uniform the law among the various jurisdictions” (§ 1-102, subd [2], par [c]), requires, as the courts below held, that a motion to dismiss on the ground of the Statute of Frauds be denied where, as here, the moving party concedes the making of the oral agreement alleged in the complaint. Respectfully, therefore, I dissent.
*620 I
Plaintiff’s complaint alleges that after he advised defendants of his intention to leave his employment with defendant G. L. Morrow Co., Inc., to form his own company he was offered, among other things, 10% ownership of the corporation to induce him to stay, that he accepted those terms and continued his employment with the corporation, but that defendants have failed and refused to pay to him the value of his 10% share of defendant corporation, which has now merged with another corporation. Without answering the complaint, defendants moved under CPLR 3211 (subd [a], par 5) to dismiss the complaint as barred by the Statute of Frauds. The affidavit of defendant Gerald L. Morrow, submitted in support of the motion, states that there was no “written agreement with regard to the transfer of any corporate stock of the defendant to the plaintiff although the subject was discussed orally by plaintiff and me.
Supreme Court denied the motion in an opinion which stated that “Defendant [sic] concedes that it did offer Plaintiff 10% of the business and that Plaintiff accepted said offer” and that “they themselves [sic] admit the offer and the acceptance.” The Appellate Division affirmed in a memorandum which stated in pertinent part: “Further, for purpose of this appeal, defendants concede that ‘the allegation of Plaintiff * * * that Gerald R. [sic] Morrow offered Plaintiff* * * 10% ownership of G.L. Morrow Co. Inc., if he did not terminate his employment must be accepted as true’. This being the case, we agree with Special Term that Gross v Vogel (81 AD2d 576) is controlling and, accordingly, affirm” (96 AD2d, at p 984 [omissions and insertions in original])”.[1] Justices Main and Levine dissented from that part of the majority holding in a dissent by Justice Levine which reasoned (96 AD2d, at p 985) that: “Defendants’ concession of the existence of the oral agreement, solely for purposes of a ruling on the validity of the complaint, does not constitute any extrajudicial or judicial admission to take the contract out of the Statute of Frauds. *621 Obviously, for purposes of a motion to dismiss the complaint, all of its allegations are deemed to be true. But the existence of the alleged contracts were similarly assumed on the motions to dismiss in Russell v Societe Anonyme des Establissements Aeroxon (supra) [268 NY 173] and Markey v Kelly (supra) [10 AD2d 650]. The dismissals of the complaints in both cases preclude reliance on defendants’ solely procedural concession as to the oral promise here. Whether there actually was such an oral promise made by defendants, the complaint fails to allege any facts authorizing enforcement of that promise. As further stated in Burns v McCormick (233 NY 230, 235, supra), ‘The most that can be said against Mr. Halsey is that he made a promise which the law did not compel him to keep, and that afterwards he failed to keep it’.” (Italics in original; matter in brackets supplied.) The Appellate Division has certified to us the question whether it erred as a matter of law in affirming Special Term’s denial of the motion to dismiss. For the reasons that follow, that question should be answered in the negative.
II
The facts stated in the complaint constitute a contract “for sale of a stated quantity of described securities at a defined or stated price” (Uniform Commercial Code, § 8-319, subd [d]), the quantity being 10% of the corporation’s stock and the price being plaintiff’s continued employment (Gross v Vogel, 81 AD2d 576, supra; see Burnside & Co. v Havener Securities Co., 25 AD2d 373). Thus, the issue before us is whether the specific Statute of Frauds in question (Uniform Commercial Code, § 8-319, subd [d]) permits dismissal of the complaint.[2] Under different circumstances, it may well be plaintiff’s burden in opposing a motion to dismiss to seek disclosure and a continuance, pursuant to CPLR 3211 (subd [d]), in order to obtain defendant’s testimony or admission concerning the claimed oral agreement. In the instant case, however, any such problem is obviated by the affirmed finding that defendants conceded the making of the oral agreement. Nor is it *622 material that, although Special Term’s finding to that effect was express and unequivocal, the Appellate Division majority noted that the concession was “for purpose of this appeal” or, as the dissenters in that court put it, that defendants’ concession of the oral agreement was “solely for purposes of a ruling on the validity of the complaint.” The Russell and Markey cases, on which the dissenters below relied, involved earlier Statutes of Frauds provisions (Personal Property Law, former § 31, subd 1; former § 85, subd 1) which did not contain any exception with respect to an admission “in his pleading, testimony or otherwise in court” as does subdivision (d) of section 8-319 of the Uniform Commercial Code. The concession found by both courts below, having been made by defendants as part of their motion to dismiss on Statute of Frauds grounds, is undeniably an admission “otherwise in court,” which mandates denial of their motion under the present statute. Indeed, as hereafter set forth, the proper construction of the statute is that even absent such a concession a complaint on an oral agreement within its terms should not be dismissed prior to. a denial by defendants that an oral agreement was reached.
Ill
Subdivision (d) of section 8-319 of the Uniform Commercial Code, pertaining to the sale of securities, and its analog, section 2-201 (subd [3], par [b]), pertaining to the sale of goods, were enacted in New York in 1962 (L 1962, ch 553, eff Sept. 27,1964) and have not been amended since in any manner relevant to the instant case (cf. L 1982, ch 928, § 20). Section 8-319 provides in pertinent part:
“A contract for the sale of securities is not enforceable by way of action or defense unless
* * *
“(d) the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract was made for sale of a stated quantity of described securities at a defined or stated price.”
The analogous provision for the sale of goods, section 2-201, provides:
*623 “(3) A contract which does not satisfy the requirements of subsection (1) but which is valid in other respects is enforceable
* * *
“(b) if the party against whom enforcement is sought admits in his pleading, testimony or otherwise in court that a contract for sale was made, but the contract is not enforceable under this provision beyond the quantity of goods admitted”.
Both statutes replaced section 85 of the Personal Property Law, which, as already noted, contained no admission exception (McKinney’s Cons Laws of NY, Book 62½, Uniform Commercial Code, § 2-201, Practice Commentary [7], Official Comment [7], NY Ann [3]; § 8-319, NY Ann [d]).
The admission exception now included in the Statute of Frauds governing sales would be meaningless were the defendant permitted by the simple expedient of a motion to dismiss to deprive plaintiff of the opportunity to obtain from defendant either an admission “in his pleading, testimony or otherwise in court” or a sworn denial of the existence of a contract. Amendment to include the admission exception makes the statutory purpose what the Maryland Court of Appeals long ago declared it should be: “to protect a party, not from the temptation to commit perjury but from perjured evidence against him” (Trossbach v Trossbach, 185 Md 47, 55 [1945]). “In the few states still using the common law demurrer, sustaining the demurrer would effectively negate the exception of the statute, which is why the court in Garrison v Piatt [113 Ga App 94] turned down sustaining a demurrer, deferring to a vitality for section 2-201(3)(b).” (Duesenberg, Statute of Frauds in its 300th Year: The Challenge of Admissions in Court and Estoppel, 33 Bus Lawyer 1859, 1864-1865.) If a prepleading motion to dismiss is permitted to defeat a cause of action on an oral sales contract before plaintiff has had an opportunity to elicit from defendant a statement in court of any kind, only malpractice by defendant’s attorney would subject the defendant to the statute’s ameliorative purpose. The Legislature in adopting the Uniform Commercial Code and the drafters of the Code cannot reasonably be thought to have intended that the exception have such limited application.
*624 IV
The historical framework against which the drafters of the Code prepared its sales Statute of Frauds provisions is fully described in a 1952 essay by Robert Stevens, then Dean of Cornell Law School, entitled Ethics and the Statute of Frauds (37 Cornell LQ 355). Dean Stevens pointed out that the early history of such statutes was that a party claiming the benefit of the statute was required to deny the existence of any agreement in his answer (Child v Godolphin, 1 Dickens 39, 42 [ch 1723]), and that only toward the end of the eighteenth century did the rule begin to change. The policy of permitting a party to welsh on an admitted or undenied agreement, which thereafter came to be the majority view, was by the middle of the present century the subject of severe criticism. Some courts (e.g., Trossbach v Trossbach, 185 Md 47, supra) rejected the rule entirely as ethically untenable and one State anticipated the formulation of the Code by enacting a statutory admission exception (Iowa Code Ann, § 622.34).
Dean Stevens concluded his essay with an impassioned plea for return to the original requirement of a sworn denial. Noting that equity courts had found ways of preventing the statute from being used to perpetuate a fraud in three different situations (fraud by defendant, part performance and defendant’s admission), in each of which there was proof to the satisfaction of the court that a contract had been made, he continued (37 Cornell LQ, at p 381):
“Of the three, the most convincing, the one with no attendant risk of perjured proof of a non-existent contract, was the class of cases in which the defendant confessed the contract. It is astonishing, therefore, that this is the only one of the three exceptional instances that has not been universally perpetuated, and it is more astonishing that the removal of the temptation to the defendant to perjure himself by denying the making of an agreement should have been employed as a device for permitting him unethically to escape an honest obligation.
“The Iowa legislature and the courts of some states deserve applause for the correctness of their attitudes. The law of the United States ought in all jurisdictions be what *625 it was believed to have been in the seventeenth and eighteenth centuries. Effect should be given to the defendant’s admission of the making of an oral contract. The statute should not be recognized as a defense except where the defendant can and does deny the contracting. It should not be permissible to raise the defense of the statute by demurrer, or by a motion to dismiss the complaint except where the motion is supported by an affidavit denying the making of the contract.
■ * * *
“As Dean Roscoe Pound has said: ‘Legal concepts sometimes are, and perhaps sometimes must be, at variance with the requirements of morals. Yet such a condition is not something of which the jurist is to be proud. It is not a virtue in the law to have it so.’ ” (Citations omitted; emphasis supplied.)
Professor Corbin agreed, calling for adoption of an admission exception, denying the benefits of the statute except to a party who is willing “to submit himself to examination in court on the merits of the case and who under oath denies making the promise as alleged” (2 Corbin, Contracts, § 275, at p 13).
It was against this background that the admissions exceptions of the Uniform Commercial Code were considered and adopted. During the period of its consideration and prior to its adoption in New York, the Law Revision Commission proposed amendments of New York’s statute governing contracts not to be performed within a year or a lifetime (1953 Report of NY Law Rev Comm [NY Legis Doc, 1953, No. 65 (O)], p 533; 1957 Report of NY Law Rev Comm [NY Legis Doc, 1957, No. 65 (A)], p 15) and governing the sale of goods (1960 Report of NY Law Rev Comm [NY Legis Doc, 1960, No. 65 (F)], p 245), all of which discussed the admissions exception proposed by the drafters of the Uniform Commercial Code. It also considered the Code provisions themselves making it the sole topic of its labors in 1955 and 1956 (1955 Report of NY Law Rev Comm [NY Legis Doc, 1955, No. 65 (A)], p 31; 1956 Report of NY Law Rev Comm [NY Legis Doc, 1956, No. 65 (A)], p 11).
*626 Our court had, as early as 1950, refused to extend the statute’s protection to one who voluntarily admitted an agreement in his pleadings (Martocci v Greater N. Y. Brewery, 301 NY 57, 61, 63), although a later Special Term decision (Smith v Muss, 203 Misc 356, app dsmd 281 App Div 957), without mention of Martocci, held that an involuntary admission in a deposition did not take the case out of the statute. Against that background, the Commission, in support of its own proposed admission exception, in discussing the proposed Uniform Commercial Code provision took the position that denial of the alleged oral agreement was necessary and that the Code provision would be acceptable only if interpreted to contain such a requirement: “The proposal in the Uniform Commercial Code seems adequate to accomplish the desired end of ‘admits’ if interpreted to include admissions by failure to deny under Civil Practice Act, section 243. It would remain open to a party answering a verified complaint to deny knowledge or information sufficient to form a belief in a proper case. If the defense is raised by motion, there is authority that it cannot be made under Rule 106 of the Rules of Civil Practice, but under the 1944 amendments to Rule 107 must be made under that rule whether or not the defect appears on the face of the complaint. If so, it would accord with the spirit of the proposed amendment if a denial of the agreement were held necessary in the affidavit required by Rule 107.” (1953 Report, p 581 [nn omitted; emphasis supplied]; accord 1957 Report, pp 21-22; 1960 Report, pp 252, 271.)
Even more directly in point are the 1955 and 1956 Reports of the Commission for they make clear that involuntary as well as voluntary admissions were intended to be covered. The 1952 version of the Uniform Commercial Code’s proposed Statute of Frauds did not include the word “testimony.” The New York Commission criticized the provision as ambiguous in that its application to involuntary admissions made on cross-examination was unclear (1956 Report, p 368; 1955 Report, p 372). In response to this criticism the Uniform Commercial Code provisions were revised in 1957 “to make it clear that it applied to admissions on cross-examination” (1956 Recommendations of *627 Editorial Bd for Uniform Commercial Code, p 25 [1957]; Farnsworth, Statute of Frauds Governing Contracts for Sale of Goods, 1960 Report of NY Law Rev Comm, pp 257, 271).
The history thus recounted makes indelibly clear the intent of the drafters of the Code, and of the New York Legislature in adopting the Code in its present form, that denial of the existence of an oral agreement is a sine qua non of reliance on the sales Statute of Frauds provisions of the Code, and such is the unanimous view of commentators who have written on the subject (Perillo, Statute of Frauds in Light of Functions and Dysfunctions of Form, 43 Fordham L Rev 39, 76; see Yonge, Unheralded Demise of the Statute of Frauds Welsher in Oral Contracts for the Sale of Goods and Investment Securities, 33 Wash & Lee Rev 1, and authorities cited therein, at p 24, nn 77-85; Hacker, Admission Exception to Iowa Statute of Frauds, 67 Iowa L Rev 551, 561; Note: Application of Oral Admission Exception to Uniform Commercial Code’s Statute of Frauds, 32 U of Fla L Rev 486, 522; Comment, Use of Oral Admissions to Lift Bar of Statute of Frauds, 65 Cal L Rev 150, 157; Cunningham, A Proposal to Repeal Section 2-201, 85 Comm LJ 361, 362).
V
In light of the expression of purpose for uniformity with the law of other jurisdictions, an important consideration in construing the Code provision before us is how it has been construed elsewhere. In other States the majority of courts take the position here espoused. A demurrer or similar preanswer motion was rejected in Garrison v Piatt (113 Ga App 94); M&W Farm Serv. Co. v Callison (285 NW2d 271 [Iowa]); Duffee v Judson (251 Pa Super Ct 406); and Dangerfield v Market (222 NW2d 373, 378 [ND]). To the same effect are those cases which hold that a compelled admission in a deposition will satisfy the statute (Oskey Gasoline & Oil Co. v Continental Oil Co., 534 F2d 1281 [8th Cir]; Matter of Particle Reduction Corp., 5 UCC Rep Serv 242 [ED Pa]; Hale v Higginbotham, 228 Ga 823; Lewis v Hughes, 276 Md 247; Cargill, Inc. v Hale, 537 SW2d 667 [Mo]; Cohn v Fisher, 118 NJ Super 286; see Duesenberg, op. cit., 33 Bus Lawyer 1859,1862-1865; Construction and *628 Application of UCC § 2-201[3][b] Rendering Contract of Sale Enforceable Notwithstanding Statute of Frauds, to Extent it is Admitted in Pleading, Testimony, or Otherwise in Court, Ann., 88 ALR3d 416, § 4, subd [b]).[3] Only two courts have sustained demurrers in this posture (Fox v Overton, 534 P2d 679 [Okla]; Anthony v Tidwell, 560 SW2d 908 [Tenn]; see, also, Simmons Oil Corp. v Bulk Sales Corp., 498 F Supp 457, 460 [applying New Jersey law, the court found the Statute of Frauds satisfied on other grounds, but stated that it would have otherwise granted a preanswer motion to dismiss the complaint]).
Lower court decisions in this State are to like effect. In two cases directly in point, courts have denied CPLR 3211 motions in precisely the posture of the present case, requiring the defendant to answer the complaint and admit or deny its allegations (Weiss v Wolin, 60 Misc 2d 750; Reissman Int. Corp. v J.S.O. Wood Prods., NYLJ, June 6, 1972, p 2, col 5, 10 UCC Rep Serv 1165).[4] The two Federal cases applying New York law are not to the contrary. In Radix Organization v Mack Trucks (602 F2d 45, 48), a summary judgment motion was granted, but the court found crucial that the plaintiffs “had ample opportunity for full discovery and there is no indication that such an admission has been made or is likely to be made.” Likewise, in Presti v Wilson (348 F Supp 543), a summary judgment motion was granted, but there had first been a denial of any agreement in both the answer and the defendant’s affidavit. Thus, not only the weight of authority outside this State but also all prior decisions in this State under the Uniform Commercial Code are consistent with the position taken by the majority below.
Consistent also with that position are Williston, Sales (4th ed, vol 2, § 14-9, pp 303-304), which characterizes it as *629 “contra to the intention of the Code to sustain a demurrer by the party against whom enforcement [of an oral agreement] is sought” (matter in brackets added), noting that a “demurrer admits the facts that are pleaded, but for the purpose of the demurrer only; and having admitted the facts, the party making the demurrer may not at the same time claim the benefit of using the demurrer and the statute”, and the Restatement of Contracts, Second (§ 133, Comment d), which states, after referring to subdivision (3) of section 2-201 and subdivision (d) of section 8-319 of the Uniform Commercial Code: “Where the writing or oral statement is made under legal compulsion, it is nonetheless effective [to satisfy the statute] unless there is a contrary procedural policy in the state” (matter in brackets added). New York’s procedural policy clearly is not contrary in light of CPLR 3211 (subd [d]), referred to above.
To hold, as did the majority in the Appellate Division, that a defendant may not admit the making of an oral contract and at the same time rely on the Statute of Frauds is, thus, consistent with the language of section 8-319 of the Uniform Commercial Code, of the history of its preparation and adoption, and of its construction by both out-of-State courts and lower courts in this State, as well as by well-recognized secondary authorities. To do so, moreover, is but a recognition of the facts that “[i]f a defendant could prevail simply by raising the Statute of Frauds in a prepleading motion to dismiss, the admission exception would be vacuous. The defendant never would have to face the choice of admitting or denying the contract” (Hacker, op. cit., 67 Iowa L Rev, at p 561) and that the provision “is designed to discourage fraudulent claims and not to caution against the making of unwise and ill-considered promises” (1960 Report of NY Law Rev Comm, p 253).
The order of the Appellate Division should be affirmed.
Chief Judge Cooke and Judges Jones, Wachtler, Simons and Kaye concur in memorandum; Judge Meyer dissents and votes to affirm in an opinion in which Judge Jasen concurs.
Order, insofar as appealed from, reversed, etc.

. Gross v Vogel held (81 AD2d 576, 577) that: "Since the parties stipulated for purposes of the instant motion that there was an oral agreement between them it was unnecessary for the court to reach the issue of unequivocal referability, which comes into play only where there is a dispute as to the existence of an agreement.”

. Arguments made below by plaintiff based on the payment and part performance exceptions of the Statute of Frauds are not considered, those questions being premature, for the reasons stated in Gross v Vogel (81 AD2d 576 [n 1, supra]) in light of the conclusion hereafter reached.

. Those cases which recognize that the Uniform Commercial Code precludes a party who acknowledges an oral contract from simultaneously claiming the benefits of the statute provide implicit support (Dehahn v Innes, 356 A2d 711 [Me]; Farmers Elevator Co. v Anderson, 170 Mont 175; Lish v Compton, 547 P2d 223 [Utah]), as does the case which recognizes that an admission in a deposition, if filed with the court, will take the contract out of the statute (Lippold v Beanblossom, 23 Ill App 3d 595).

. To the same effect is Gross v Vogel (81 AD2d 576), in which an oral contract was admitted solely for the purpose of a summary judgment motion. Implicitly, the case stands for the principle that a party relying on the Statute of Frauds must deny the existence of the oral contract under oath at trial and ipso facto may not demur to the complaint on this ground.