Colleen C. BEASCOECHEA, Administratrix of the Estate of Nestor J. Beascoechea and Colleen C. Beascoechea, in her own right

v.

SVERDRUP & PARCEL AND ASSOCIATES, INC., Woodward-Clyde Consultants, Inc., Trans-World Airlines, Inc., and Pan American World Airways, Inc.

Civ. A. No. 79–3424.

United States District Court, E. D. Pennsylvania.

March 11, 1980.

Jerome R. Richter, Mitchell S. Cohen, Philadelphia, Pa., for plaintiffs.

F. Hastings Griffin, Jr., Philadelphia, Pa., James S. Kilpatrick, Jr., Ardmore, Pa., Robert G. Kelly, Jr., J. Grant McCabe, III, Philadelphia, Pa., for defendants.

## MEMORANDUM

TROUTMAN, District Judge.

In September 1977 defendant Sverdrup & Parcel and Associates, Inc. (Sverdrup) entered into a contractual agreement with the Electricity Generating Authority of Thailand (EGAT) for engineering services in connection with the inspection and construction of certain phases of a dam construction project entitled the Pattani Multipurpose Project in Thailand.[1] Sverdrup agreed to furnish professional and technical personnel, equipment, materials and supplies and to perform construction management services for Phase Five of the project and any other engineering services as required or directed by EGAT pursuant to their contract. Sverdrup also agreed to act in an advisory capacity as overall consultant with the responsibility to ensure that the project was completely and properly constructed. Four months later Sverdrup entered into a contract with defendant Woodward-Clyde Consultants, Inc. (Woodward). This secondary contract engaged Woodward to assist Sverdrup in providing engineering design, procurement and other consulting services, including furnishing construction management services in connection with the construction of an earth-rockfill dam, and a powerhouse and appurtenant structures for the Pattani Multipurpose Project. Woodward also agreed to provide at the project site a full-time geologist who would provide geological services and advice during construction of the project. Accordingly, Woodward offered this position to one of its employees, plaintiff's decedent, who agreed to travel to the Thailand construction site and to render professional services as resident chief geologist. The employment agreement between plaintiff's decedent and Woodward was part and parcel of the prime and secondary contracts previously executed by and between EGAT, Sverdrup and Woodward.[2]

In March 1978 plaintiff's decedent, his wife (plaintiff) and their year-old son arrived in Bangkok and travelled five hundred miles south to the project site. Thereafter plaintiff performed all duties, services, functions and responsibilities required of him as resident chief geologist. About thirteen months later plaintiff's decedent, who worked approximately twelve to fourteen hours daily, seven days a week, became ill with an undisclosed illness which progressed to the point of threatening life in July 1979. At that time doctors in Bangkok advised plaintiff's decedent to return to America for further examination, evaluation, treatment and possible surgery. On August 1, 1979, plaintiff's mother and son left Bangkok for the United States aboard an airplane owned and operated by defendant Pan American World Airways (Pam Am). The next day plaintiff and her decedent left Bangkok on a flight of defendant Trans-World Airlines, Inc. (TWA). Five days later plaintiff's decedent died in a Reading, Pennsylvania, hospital as a result of the "persistent and debilitating illness and disabilities" which he contracted while in Thailand.

Plaintiff then instituted this action against Sverdrup and Woodward and alleged that both defendants knew or should

---

1. To distinguish this from other pertinent contracts, the agreement between EGAT and Sverdrup will be denominated as the "primary contract".

2. For present purposes only, we accept as true the factual allegations contained in plaintiff's complaint.

have known that the employment situation then existing in Thailand posed substantial hazards, unsafe working conditions and health and safety risks to plaintiff's decedent and family, that they willfully, maliciously, and deliberately made false, fraudulent and fictitious promises, guarantees and representations to induce plaintiff's decedent to go to Thailand, and that plaintiff's decedent relied on these promises to his detriment.

Plaintiff also claims that Sverdrup and Woodward libelled and slandered plaintiff and her decedent by communicating to others that plaintiff's decedent was incompetent, alcoholic, constantly drunk and not suffering from any physical or mental illness. Defendants also published a photograph of plaintiff's decedent being helped by others into a vehicle en route to a hospital for medical treatment. Defendants allegedly depicted this picture as proof that plaintiff's decedent was so inebriated that he typically required assistance from others in order to move about and within the project site. Plaintiff alleges that these actions blackened the reputation of her decedent, exposed them to public hatred, contempt and ridicule, and falsely ascribed to her decedent want of integrity and professional competence.

·Plaintiff also alleges that Sverdrup and Woodward intentionally inflicted emotional distress on the decedent, the plaintiff and her son by employing officers, supervisors and other employees who defendants knew consumed large quantities of alcohol and engaged in abusive and outrageous conduct while under the influence thereof. These employees' actions, allegedly calculated to cause plaintiff's decedent to break his employment agreement and resign, caused plaintiff and her decedent severe emotional distress. Plaintiff further alleges that Sverdrup falsely imprisoned plaintiff and her family by removal of vehicle privileges and denial of transportation facilities and thus deprived them of food and urgently needed medical attention. Continuing, plaintiff alleges that Sverdrup and Woodward negligently failed to provide adequate medical facilities and personnel, adequate transportation to existing medical facilities, adequate evacuation methods and negligently employed officers and supervisors whose manifest proclivities rendered them untrustworthy and unreliable.

Against defendant Pan Am plaintiff alleges fraud. Pam Am supposedly promised to evacuate plaintiff's decedent expeditiously, when plaintiff first contacted them on July 26. Relying on this representation, plaintiff did not make other arrangements to leave Thailand. However, Pan Am did not remove plaintiff and her decedent until August 2. Plaintiff also alleges that defendant Pan Am slandered plaintiff and her decedent by stating that plaintiff's decedent was incompetent, alcoholic, constantly drunk, not suffering from any physical or mental illness and lacking a respected credit rating. Plaintiff also accuses Pan Am of intentionally inflicting emotional distress on her and her decedent with the purpose of inducing plaintiff to use another airline since Pan Am considered plaintiff and her decedent a poor credit risk. Plaintiff also accuses Pan Am of negligence in evacuating plaintiff and her decedent.

Against defendant TWA plaintiff alleges negligence in failing to transmit information to TWA personnel in the United States that plaintiff's decedent would require emergency or other medical treatment upon arrival and in not providing an ambulance service for plaintiff's decedent upon his arrival.

When plaintiff originally filed suit, she included only defendants Sverdrup and Woodward. Shortly thereafter she amended her complaint to include TWA and Pan Am. Defendant Pan Am then filed a motion for a more definite statement.[3] Plaintiff now seeks to amend her complaint by adding her son, represented by the plaintiff as his mother and natural guardian, as a

---

**3.** Defendant Pan Am's Motion for a Definite Statement is presently pending before the Court.

party, and by adding a few items to her allegations of slander against Pan Am, which opposes the motion to the extent that it purports to satisfy the requirement for pleading defamation. Pan Am contends that the proposed amendment is legally insufficient and not made in good faith.[4]

 Generally, where the interests of justice will be served, and defendant will not be unfairly prejudiced, courts usually allow plaintiffs to amend the complaint "freely", for the "Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome" and advance instead the principle that the pleadings should facilitate, not obstruct, a proper disposition on the merits.

*Holman v. Carpenter Technology Corp.*, 484 F.Supp. 406, 408 (E.D.Pa.1980), quoting *Conley v. Gibson*, 355 U.S. 41, 48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957) (citations omitted). See also Fed.R.Civ.P. 15(a) and 28 U.S.C. § 1653. Plaintiff's motion to amend the amended complaint attempts to add the claims of her son to the counts of fraud, defamation, intentional infliction of emotional distress and negligence against Pan Am. The Federal Rules provide that

[e]very action shall be prosecuted in the name of the real party in interest. An . . . administrator . . . *may* sue in his own name without joining with him the party for whose benefit the action is brought . . .

Fed.R.Civ.P. 17(a) (emphasis added). The permissive language of the rule does not preclude the beneficial owner from suing or joining with the legal title holder if the beneficial owner has the right sought to be enforced. In other words, an action shall be prosecuted in the name of the party who "by the substantive law has the right to be enforced". *Kenrich Corp. v. Miller*, 256 F.Supp. 15, 17 (E.D.Pa.1966). The purpose of this rule is to guarantee that the person who possess the right to enforce a claim and has a significant interest in the litigation will prosecute the matter. *Virginia Elec-*

*tric & Power Co. v. Westinghouse Electric Corp.*, 485 F.2d 78 (4th Cir. 1973), *cert. denied*, 415 U.S. 935, 94 S.Ct. 1450, 39 L.Ed.2d 493 (1974). Principles of state substantive law determine whether the beneficial owner has the right sought to be enforced. *Virginia Electric & Power Co. v. Westinghouse Electric Corp., supra, Dixie Portland Flour Mills, Inc. v. Dixie Feed and Seed Co.*, 382 F.2d 830 (6th Cir. 1967), *Kenrich Corp. v. Miller, supra.* Thus, even though the question of in whose name an action may be prosecuted is procedural and governed by federal law, its resolution depends on the underlying substantive law of the state. *Virginia Electric & Power Co. v. Westinghouse Electric Corp., supra.*

 Pennsylvania law provides that "an action for wrongful death shall be brought *only by the personal representative* of the decedent for the benefit of those persons entitled by law to recover damages for such wrongful death". Pa.R.Civ.P. 2202(a) (emphasis added). Only if the personal representative fails to institute suit within six months of the decedent's death may any person entitled by law to recover damages therefor sue on his own behalf. Pa.R.Civ.P. 2202(b). A survival action, on the other hand, is not a new cause of action at all, but "merely continues in [the decedent's] personal representatives the right of action which accrued to the deceased at common law because of the tort". *Pezzulli v. D'Ambrosia*, 344 Pa. 643, 26 A.2d 659 (1942). Only when the fiduciary is derelict in his duty does the beneficial owner obtain a right of action. *Suders v. Campbell*, 73 F.Supp. 112 (M.D.Pa.1947). *See also Finn v. Dugan*, 260 Pa.Super. 367, 394 A.2d 595 (1978) ("[a]ll actions that survive a decedent must be brought by . . . a personal representative"). In the case at bar plaintiff, as administratrix of her husband's estate, has already brought suit under the wrongful death and survival acts. 20 Pa. Cons.Stat.Ann. § 3373 (Purdon) and 42 Pa. Cons.Stat.Ann. § 8301 (Purdon). Consequently, her son may not bring suit under either of these provisions.

---

4. The other defendants subsequently joined in this motion.

Plaintiff's effort to include her son in claims for fraud by Pan Am does *not* fail, however. Granted, the rules do specifically require that fraud be pleaded "with particularity", Fed.R.Civ.P. 9(b), but this requirement must be read in conjunction with the liberal pleading rules, which eschew obsolete technicalities. *Denny v. Carey*, 72 F.R.D. 574 (E.D.Pa.1976), *duPont v. Wyly*, 61 F.R.D. 615 (D.Del.1973), *United Insurance Co. of America v. B. W. Rudy, Inc.*, 42 F.R.D. 398 (E.D.Pa.1967), Fed.R. Civ.P. 1. The rules do not impose a rigorous burden of pleading on plaintiff, *Denny v. Carey, supra*, and do not require plaintiff to plead every element of fraud. *United Insurance Co. of America v. B. W. Rudy, Inc., supra*. Rather, plaintiff must set forth facts with sufficient particularity to apprise defendants fairly of the charges against them. *Union Mutual Life Insurance Co. v. Simon*, 22 F.R.D. 186 (E.D.Pa.1958). *See also Consumers Time Credit, Inc. v. Remark Corp.*, 227 F.Supp. 263 (E.D.Pa.1964). Having identified "with particularity" the circumstances surrounding the alleged fraud, plaintiff has pleaded fraud sufficiently to withstand a motion to dismiss or for a more definite statement.[5]

Plaintiff may also include her son's claim for negligence against Pan Am, which contends that since TWA actually transported plaintiff's son back to America these allegations are contradictory. However, plaintiff alleges that Pan Am "failed to take any steps whatsoever calculated or designed to evacuate plaintiff, her minor son and her husband from Thailand by any other air carrier, knowing full well of [her husband's] worsening mental and physical condition". Proposed Amended Complaint ¶ 138. In this proposed complaint plaintiff also mentions that she contacted Pan Am as early as July 26 to make arrangement for their departure from Bangkok. Pan Am's alleged failure to evacuate them promptly, despite apparent promises to do so, is the matrix of plaintiff's claim of negligence.

Thus, TWA's eventual transportation of plaintiff's son does not exonerate Pan Am if indeed it negligently failed to remove plaintiff's family expeditiously. With a plausible basis for a negligence claim plaintiff may amend her complaint to include these paragraphs.

Plaintiff may also amend the complaint to include her son's allegations of defamation by Pan Am. True, *Waugh v. Gaudio Brothers, Inc.*, 422 F.Supp. 392 (E.D. Pa.1976), held that a father could not recover for the defamation of his daughter. To allow recovery under the circumstances there presented, the court opined, would extend Pennsylvania law beyond its current posture. However, the court also added that

[t]here may possibly be a set of facts which would justify the recognition of a cause of action in favor of persons who suffer severe emotional distress due to the defamation of a member of their immediate family which comes to their attention sometime after it occurs.

*Id.* at 394. Defendant has not effectively established that Pennsylvania absolutely refuses to recognize such a cause of action. Therefore, plaintiff should be given an opportunity to amend the complaint to include this allegation.

Plaintiff may also amend the complaint to include her son's claims of intentional infliction of emotional distress. This tort no longer requires the physical presence of the injured party as an element of the claim. *Sinn v. Burd*, 486 Pa. 146, 404 A.2d 672 (1979). Whether Pan Am's negligent treatment of her son meets the requirement of extreme and outrageous conduct intentionally or recklessly caused by defendant is a matter to be resolved at trial.

Defendant's final contention is that plaintiff has failed to allege slander properly because she neither specified the defamatory communications *in haec verba*

---

5. The remedy for a vague complaint is not a motion to dismiss, *Glus v. Brooklyn Eastern District Terminal*, 359 U.S. 231, 79 S.Ct. 760, 3 L.Ed.2d 770 (1959), but a motion for a more particular statement of claim. *United Insurance Co. of America v. B. W. Rudy, Inc., supra*.

nor set out the circumstances of publication or the facts relied upon to establish publication. Plaintiff has represented that the allegations in the complaint exactly recite the statements made to plaintiff and are based upon the recollection of the parties. A complaint which established adequate jurisdictional grounds needs only "a short and plain statement of the claim showing that the pleader is entitled to relief, and a demand for judgment . . ." Fed.R. Civ.P. 8(a). The rules do not require a statement of facts sufficient to constitute a cause of action. *Schaedler v. Reading Eagle Publications, Inc.*, 370 F.2d 795 (3d Cir. 1967).

An appropriate order will be entered.