Kahlman **LINKER**

v.

**CUSTOM–BILT MACHINERY INC.**
**et al.**

**Civ. A. No. 83–5980.**

United States District Court,
E.D. Pennsylvania.

June 28, 1984.

Albert L. Becker, Philadelphia, Pa., for plaintiff.

Joseph A. Torregrossa, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

JAMES McGIRR KELLY, District Judge.

This is a civil action commenced by a minority shareholder against a corporation and its directors, several of whom are also majority shareholders. Plaintiff's Amended Complaint sets forth claims based upon common law fraud, securities fraud, misrepresentation, and breach of duty. These claims arise from several securities transactions involving Custom-Bilt's corporate predecessor occurring over the past 15 years, which include: (1) the offering in 1969 and 1970 of shares of the defendant Custom-Bilt Machinery, Inc.; (2) the establishment in 1978 by Custom-Bilt of an Employee Stock Option Plan; (3) the repurchase in 1980 by Custom-Bilt of certain of the shares issued in the offerings of 1969 and 1970; and (4) the contribution to and valuation of Custom-Bilt shares by the Employee Stock Option Plan. In substance, plaintiff alleges that the defendants have engaged in fraudulent conduct regarding the issuance, repurchase and valuation of these shares. Plaintiff brings this action as the real party in interest, as defined by Rule 17(a) of the Federal Rules of Civil Procedure, as the beneficial owner of some 10,000 shares of Custom-Bilt Class A common stock registered in the name of Creative Aids, Inc. At the time of the events complained of, plaintiff was president of Creative Aids, Inc.

Presently before the Court are plaintiff's Motion to Permit Dynamism USA to Appear as *Amicus Curiae* and plaintiff's Motion to Strike Affirmative Defenses and to Dismiss Defendants' Counterclaims.

FACTS

Plaintiff alleges in his Complaint the following facts giving rise to his cause of action:

Custom-Bilt Machinery, Inc. ("Custom-Bilt # 2") now designs and manufactures specialized equipment for the graphic arts industry and composes and prints advertising. It is the successor to Advance Enterprises, Inc. ("Advance"). Advance was created by merger of Custom-Bilt Machinery, Inc. ("Custom-Bilt # 1") and Apollo Ad Service, Inc. ("Apollo") as of June 30, 1969, and continued such corporate status for some fourteen (14) years until June, 1983, when Advance was succeeded by Custom-Bilt # 2, with Apollo becoming a subsidiary company.

In October, 1969, following the merger of Custom-Bilt # 1 and Apollo into Advance, Advance offered to sell 50,000 shares of Class A common stock, without underwriters, to a limited group of outside investors in a private offering at a price of $6.00 per share. On May 6, 1970, and June 28, 1971, respectively, Creative Aids, Inc. ("Creative Aids") subscribed to purchase 3,000 and 10,000 shares of Advance Class A common stock at the price of $6.00 per share. Creative Aids was one of at least fourteen (14) outside investors who subscribed to Advance's private offering. The total number of shares sold pursuant to the private offering was reported to be 52,900 shares, at a total purchase price of $317,400.00.

Effective January 1, 1978, Advance established an Employee Stock Ownership Plan ("ESOP"), as defined in section 4975(e)(7) of the Internal Revenue Code, to invest in Advance's Class A common stock for the benefit of its employees. Under the ESOP, the amount of Advance's annual

contribution to the plan was determined, subject to IRS limitations, by Advance's Board of Directors, and Advance's contribution to the plan was allocated among Advance's eligible employees based upon the employees' annual compensation. In a tender offer dated June 9, 1980, Advance's ESOP offered to purchase all of Advance's Class A common stock held by unaffiliated shareholders at $7.00 per share. Apparently, all such shares were deposited in acceptance of the tender offer except for the 10,000 shares allegedly owned by plaintiff and a total of 3,000 additional shares allegedly owned by plaintiff's wife and their two (2) children.

Plaintiff avers that evidence will establish that, beginning with the merger of Apollo and Custom-Bilt #1 in June, 1969, and the limited private offering of 50,000 shares of Advance Class A common stock at $6.00 per share in November, 1969, Advance, by the named defendant directors, jointly and/or severally, sought to deceive and mislead the investors who had purchased the stock in the limited private offering, about the true value of their stock, the object of which was to deprive the outside investors of a fair return on their investment so that the shares could be repurchased at an unconscionably low price for the benefit of defendant directors and other "insiders".

### A. Motion of Dynamism USA to Appear as Amicus Curiae

■ Dynamism USA (United in Spiritual Adoration) is a nonprofit corporation of which plaintiff is the founder and president. The objective of the corporation, as stated in its corporate charter, is to undertake actions on behalf of persons of small or moderate means "in ways that will increasingly assure that they fairly share in the enjoyment of the fruits of their labor, whether working for themselves or others." Motion by Dynamism USA to Appear as Amicus Curiae ("Amicus Motion"), Exhibit A. In addition, Dynamism USA seeks to obtain for its clients "effective and enduring representation in the de-

cision making councils of governmental, institutional, quasi-public and private ... enterprise organizations of the country; as well as by applying processes which will substantially lessen and/or obtain direct or indirect reimbursement for the unfair exploitation to which they may have been subjected." Id. Dynamism USA seeks to appear as amicus curiae in this action on behalf of those persons who accepted the tender offer on June 9, 1980. Plaintiff's Affidavit, attached to the moving papers states that he believes these persons were fraudulently manipulated into accepting the ESOP's tender offer of June 9, 1980. Amicus Motion Affidavit at 3.

### DISCUSSION

The legal definition of amicus curiae is as follows:

> Means literally, friend of the court. A person with strong interest or views on the subject matter of an action may petition the court for permission to file a brief, ostensibly on behalf of a party but actually to suggest a rationale consistent with its own views.

Black's Law Dictionary 75 (5th ed. 1979).

Inasmuch as an amicus is not a party and "does not represent the parties but participates only for the benefit of the court, it is solely within the discretion of the court to determine the fact, extent, and manner of participation by the amicus." Alexander v. Hall, 64 F.R.D. 152, 155 (D.S. C.1974) (collecting cases). While the "discretion of the court" is a phrase which can accommodate a number of unusual circumstances, I see no useful purpose to be served by permitting Dynamism USA to appear as amicus. As the Court stated in Strasser v. Doorley, 432 F.2d 567 (1st Cir. 1970),

> We recognize that the acceptance of amicus briefs is within the sound discretion of the court, and that by the nature of things an amicus is not normally impartial. Furthermore, if an amicus causes the district court to make an error of law—an amicus who argues facts should

rarely be welcomed—the error can be corrected on appeal. Nonetheless, we believe a district court lacking joint consent of the parties should go slow in accepting, and even slower in inviting, an amicus brief unless, as a party, although short of a right to intervene, the amicus has a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance.

*Id.* at 569 (footnotes omitted).

None of the factors noted in *Strasser* support permitting Dynamism USA to appear as *amicus.* Furthermore, both the class action device under Rule 23 as well as intervention under Rule 24 of the Federal Rules of Civil Procedure exist as possible means by which Dynamism USA or its members or constituents may appear before the Court. The Court sees no benefit to be gained by permitting Dynamism USA to appear as *amicus curiae,* therefore, the motion will be denied.

### B. *Motion to Strike*

Plaintiff moves to strike, pursuant to Rule 12(f) of the Federal Rules of Civil Procedure, three of defendants' affirmative defenses on the following grounds:

a) 18th Affirmative Defense—Plaintiff's Amended Complaint was commenced in bad faith.

b) 6th Affirmative Defense—Plaintiff's Amended Complaint should be dismissed for failure to join necessary and indispensable parties.

c) 5th Affirmative Defense—Plaintiff's Amended Complaint is barred by laches.

### DISCUSSION

▉ An affirmative defense can be stricken "only if the defense asserted could not possibly prevent recovery under any pleaded or inferable set of facts." *United States v. Pennsalt Chemical Corp.,* 262 F.Supp. 101 (E.D.Pa.1967); *M.L. Lee & Co. v. American Cardboard & Packaging Corp.,* 36 F.R.D. 27, 29 (E.D.Pa.1964). The courts agree that a motion to strike an affirmative defense is not appropriate in.

two circumstances. First, a motion to strike should not be granted when the sufficiency of the defense depends upon disputed issues of fact. *Mohegan Tribe v. State of Conn.,* 528 F.Supp. 1359, 1362 (D.C.Conn.1982); *American Oil Co. v. Cantelou Oil Co.,* 41 F.R.D. 143, 145–47 (W.D.Pa.1966); *Fox v. Trans World Airlines, Inc.,* 20 F.R.D. 565, 567–68 (E.D.Pa. 1957). Second, a motion to strike is not the appropriate procedure to determine disputed or unclear questions of law. *Mohegan Tribe v. State of Conn., supra* at 1362; *Smith v. Piper Aircraft Corporation,* 18 F.R.D. 169, 177 (M.D.Pa.1955). *See also,* 2A J. Moore, Moore's Federal Practice, ¶ 12.21 at 2437 (2d ed. 1968) ("A motion to strike a defense will be denied if the defense is sufficient as a matter of law or if it fairly presents a question of law or fact which the court ought to hear"). Applying the foregoing principles to the instant motion, I conclude that plaintiff's motion to strike must be denied.

### 1. *Bad Faith Motive*

▉ The only legal authority cited by plaintiff, *Higgins v. Shenango Pottery Co.,* 99 F.Supp. 522, 525 (W.D.Pa.1951), concerns defendants' eighteenth affirmative defense regarding plaintiff's bad faith. However, more recent case law and secondary authority support the proposition that a shareholder's bad faith motive in commencing an action may be a proper defense to a claim against a corporation or its directors. *See* 13 W. Fletcher, *Cyclopedia of the Law of Private Corporations,* § 5877 at 239 (rev. perm. ed. 1980) ("There is a conflict in the decisions as to whether the improper motive of the stockholder or stockholders who bring suit is a defense."). Although research has disclosed no Pennsylvania case deciding this issue, absent a clear statement to the contrary by the Pennsylvania Supreme Court, plaintiff cannot argue that the defense of bad faith motive is insufficient as a matter of law in this case. *See Barrios v. Dade County of State of Florida,* 310 F.Supp. 744, 747 (S.D.N.Y. 1970).

Moreover, plaintiff's bad faith motive raises the issue of his compliance with Rule 11 of the Federal Rules of Civil Procedure. See *Lirtzman v. Spiegel*, 493 F.Supp. 1029, 1032 (N.D.Ill.1980). If this Court determines that plaintiff commenced this action in bad faith it may impose appropriate sanctions, including the award of counsel fees and expenses. *Roadway Express, Inc.· v. Piper*, 447 U.S. 752, 766, 100 S.Ct. 2455, 2464, 65 L.Ed.2d 4888 (1980); *Alyeska Pipeline Co. v. Wilderness Society*, 421 U.S. 240, 258–59, 95 S.Ct. 1612, 1622, 44 L.Ed.2d 141 (1975); *Hall v. Cole*, 412 U.S. 1, 5, 93 S.Ct. 1943, 1946, 36 L.Ed.2d 702 (1973); *Perichak v. International Union of Elect. Radio*, 715 F.2d 78, 80 (3d Cir.1983). Similarly, plaintiff's bad faith motive is relevant to the issue of ·punitive damages to the defendants. *Franklin Music v. American Broadcasting Companies*, 616 F.2d 528, 542 (3d Cir. 1979). Thus, even if bad faith motive is not · an affirmative defense to a shareholder's action under Pennsylvania law, plaintiff's bad faith motive remains a relevant issue in this case. Therefore, plaintiff's motion to strike the eighteenth affirmative defense will be denied.

### 2. *Indispensable Parties*

Plaintiff's brief states that defendants' Answer fails to identify the identity and address of the parties which defendants claim are indispensable to the action. Defendants state that a factual dispute as to the identity of the· indispensable parties exists, thus warranting denial of the motion to strike.

The Advisory Committee Notes appended to Rule 19 of the Federal Rules of · Civil Procedure state that "[a] joinder question should be decided with reasonable promptness, but decision may properly be deferred if adequate information is not available at the time." Fed.R.Civ.P. 19. The Notes also state that "[a] person may be added as a party at any stage of the action ... and [joinder] may be made as late as the trial on the merits..." *Id.* Since this litigation is in its preliminary stages, no prejudice will accrue to any party if action is deferred. Therefore,· plaintiff's motion to strike defendants' sixth affirmative defense will be denied.

### 3. *Laches*

Plaintiff's argument that defendants' assertion of laches as a defense improperly concerns itself with plaintiff's motive is without merit, not to mention citation to any legal authority. Therefore, plaintiff's motion to strike defendant's fifth affirmative defense will be denied.

### C. *Motion to Dismiss Defendant's Counterclaims*

In response to plaintiff's allegations that the defendants have manipulated the value of the stock of the corporation, defendants have asserted counterclaims for defama-· · tion, for wrongful use of civil process, for declaratory judgment, for equitable relief, and for emotional distress. Plaintiff moves to dismiss defendants' counterclaims on three bases: (1) lack of jurisdiction; (2) failure to state a claim; and (3) statute of · limitations.

### 1. *Jurisdiction*

In order for the Court to have jurisdiction over defendants' counterclaims, the counterclaims must be characterized as either compulsory, that is, "aris[ing] out of the same transaction or occurrence that is the subject matter of the opposing parties' claim", Fed.R.Civ.P. 13(a), or permissive in which case the claim need not bear any relationship at all to the primary claim. Fed.R.Civ.P. 13(b) If the counterclaim is deemed compulsory, no independent subject matter jurisdiction is required and the Court adjudicates the claim within its so-called ancillary or pendent jurisdiction. 6 C. Wright and A. Miller, *Federal Practice and Procedures* § 1414, pp. 69–70 (1971). If the counterclaim is styled permissive, an independent ground for federal jurisdiction must exist. *Id.* at § 1422, p. 119. Having examined the nature of the counterclaims, the court is satisfied that jurisdiction exists under either theory.

■ Courts and commentators agree that for the purpose of determining whether a counterclaim is compulsory, "transaction or occurrence" should be liberally construed. *Id.* at § 1410, p. 40. *See also Moore v. New York Cotton Exchange,* 270 U.S. 593, 610, 46 S.Ct. 367, 371, 70 L.Ed. 750 (1926). The Court of Appeals for the Third Circuit has held that the "transaction or occurrence" test is satisfied whenever a counterclaim bears a "logical relationship" to the plaintiff's claim. *Great Lakes Rubber Corp. v. Herbert Cooper Co.,* 286 F.2d 631, 634 (3d Cir.1961).

■ Plaintiff does not dispute that defendants' counterclaims for declaratory and equitable relief satisfy the "transaction or occurrence" test. These counterclaims raise the issue of ownership of the Custom-Bilt shares that are the subject matter of plaintiff's Amended Complaint, and arise from the same securities transaction. Similarly, defendants' counterclaim for defamation is based upon the identical securities transactions and conduct by the defendants allegedly supporting plaintiff's claims of fraud, misrepresentation, misconduct and breach of duty. Inasmuch as the counterclaims are compulsory, the Court has no discretion under Fed.R.Civ.P. 13(a) to deny defendants their due process right to litigate their claims against the plaintiff.

Defendants' counterclaims for abuse of process and intentional infliction of emotional distress do involve occurrences apart from the securities transactions. However, these separate occurrences clearly bear a logical relationship to the securities transactions. Therefore, jurisdiction over defendants' counterclaims exists under Fed.R.Civ.P. 13(a).

Even if these counterclaims are not properly brought as compulsory, they meet the requirements of permissive counterclaims which the court in its discretion may permit. Diversity of citizenship exists between the parties and the defendants' claim in excess of $10,000 in damages in each counterclaim.

■ Plaintiff argues that defendants have not pled the nature of the injury which supports the $10,000 jurisdictional prerequisite. The standard by which the Court examines a plaintiff's claim for damages is the "legal certainty" rule. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 289, 58 S.Ct. 586, 590, 82 L.Ed. 845 (1938); *Wade v. Rogala,* 270 F.2d 280, 284 (3d Cir.1959). Under this test, defendants' properly pleaded counterclaims satisfy the requisite amount in controversy unless the court determines to a legal certainty that the claims are for less than the jurisdictional amount of $10,000. The amount claimed by the claimant controls if the claim is apparently made in good faith. *St. Paul Mercury Indemnity Co. v. Red Cab Co., supra* at 288–90, 58 S.Ct. at 590–91; *Wade v. Rogala, supra* at 284. Defendants' counterclaims clearly satisfy this standard.

## 2. Declaratory Judgment and Equitable Relief Claims

Defendants' third counterclaim seeks a declaratory judgment[1] that 3,000 shares of stock in Advance which was purchased in 1970 by Creative Aids, and which was subsequently transferred to plaintiff, his wife and two children, was in violation of the Subscription Agreement entered into at the time of the original limited offering. The fourth counterclaim seeks an order directing plaintiff to transfer all shares of Class A common stock owned or controlled by plaintiff to Custom-Bilt Machinery #2 in exchange for the fair market value of his shares as determined by an appraisal of a special master designated by the Court.

---

1. 28 U.S.C. § 2201, the Declaratory Judgment Act, provides as follows:
 Creation of remedy
 In a case of actual controversy within its jurisdiction, ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

Plaintiff seeks dismissal of these claims on the basis that no justiciable case or controversy exists.

■■■ As the pleadings in this case demonstrate, true ownership of the shares is unclear. Even though the shares were subscribed and issued to Creative Aids, plaintiff alleges that he is the true owner of the shares. In addition, plaintiff's Amended Complaint suggests that Ruth Linker, Jonathan Linker and Kate Linker may have an ownership interest in the shares. The authorities agree that the question of rightful ownership of securities is a proper "case or controversy" for the purpose of a declaratory judgment action. 12 W. Fletcher, *Cyclopedia of the Law of Private Corporations*, § 5528.2 at 438 (rev. perm. ed. 1971). *See Price v. Rome*, 222 So.2d 252 (Fla.App.1969), *cert. denied*, 226 So.2d 820 (Fla.1969). Thus, the issue of the true ownership of these shares, raised by the pleadings, constitutes a "case or controversy" supporting this counterclaim.

■■■ Plaintiff also attacks defendants' counterclaims under the Declaratory Judgment Act on the grounds that it violates plaintiff's right to a jury trial. The authorities clearly permit a declaratory judgment claim to be tried together with a claim requesting a jury trial. *See Beacon Theaters v. Westover*, 359 U.S. 500, 508, 79 S.Ct. 948, 955, 3 L.Ed.2d 988 (1959). Thus, the fact that plaintiff seeks a jury trial in no way requires that defendants' counterclaim for a declaratory judgment or equitable relief be dismissed. Accordingly, plaintiff's motion to dismiss defendants' third and fourth counterclaims will be denied.

### 3. *Failure to State a Claim*

#### a. Infliction of Emotional Distress

Plaintiff asserts that the counterclaim of defendant Hans Faltin for intentional infliction of emotional distress should be dismissed because of the failure to allege the requisite element of physical impact or threat of physical impact.

■■■ Pennsylvania recognizes the tort of intentional infliction of emotional distress. *See Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265, 1273–74 (3d Cir.1979). *Papieves v. Lawrence*, 437 Pa. 373, 379, 263 A.2d 118, 121 (1970). Although physical impact apparently remains an element of a claim for *negligent* infliction of emotional distress, it is not an element of the claim for *intentional* infliction of emotional distress. *See Banyas v. Lower Bucks Hospital*, 293 Pa.Super. 122, 129, 437 A.2d 1236, 1239–40 (1981); *Beascoechea v. Sverdrup & Parcel and Assoc., Inc.*, 486 F.Supp. 169, 174 (E.D.Pa.1980) (Troutman, J.).

Defendant Hans Faltin has properly alleged that plaintiff's conduct giving rise to the claim for infliction of emotional distress was intentional. *Counterclaim* ¶ 116. Accordingly, no allegation of physical impact or threat of physical impact is required to support this counterclaim.

#### b. Defamation

Plaintiff attacks defendants' counterclaim for defamation on the basis that the counterclaim is vague and relies solely on conclusory statements. Specifically, plaintiff argues that the counterclaim does not set forth any facts supporting defendants' allegations of defamation.

Pursuant to Fed.R.Civ.P. 8(a)(2), a properly pleaded counterclaim requires only "a short and plain statement of the claim showing that the pleader is entitled to relief...." *Id.* Furthermore, Rule 8(e)(1) requires that each allegation in the counterclaim "be simple, concise, and direct." *Id.* These pleading rules reflect the philosophy of notice pleading embodied in the Federal Rules of Civil Procedure. Notice pleading seeks only to assure that the statement of the claim "indicate(s) generally the type of litigation that is involved." 2a J. Moore, *Moore's Federal Practice* ¶ 8.03 at 8–21 (2d ed. 1979). Accordingly, Rule 8 is satisfied when the statement of the claim provides "fair notice to the adversary of the nature and basis of the claim asserted and a general indication of the

**902**

type of litigation involved." *Continental Collieries v. Shober*, 130 F.2d 631, 635 (3d Cir.1942).

 The pleading requirements of Rule 8 apply to actions for defamation and special pleading requirements should not be inferred. It is sufficient for dismissal purposes in defamation proceedings that plaintiff has advanced colorable claims of having been identified and described by the defamatory comment. *Geisler v. Petrocelli*, 616 F.2d 636, 640 (2d Cir.1980); *See also Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir.1976); *Beascoechea v. Svredrop & Parcel and Assoc., Inc.*, 486 F.Supp. 169, 174–75 (E.D.Pa.1980). The pleadings need be detailed only to the extent necessary to enable defendant to respond and to raise the defense of *res judicata* if appropriate. *Geisler, supra* at 640. The pleading of additional evidence is in contravention of proper pleading procedure. *Id.*

### c. Wrongful Use of Civil Proceedings

 Defendants second counterclaim alleges that "plaintiff caused the summons, complaint and amended complaint to be served upon the defendants for improper purposes namely, to frighten, threaten, and harass the defendants and to cause them to suffer personal harm and embarrassment." Answer at 13. The claim for improper initiation of a lawsuit[2] is governed by 42 Pa.C.S.A. § 8351 which states:

**2.** While the pleading does not designate the counterclaim in any particular way, Defendants' Memo refers to the counterclaim as both malicious prosecution and abuse of process. These are separate torts. As the courts of this Commonwealth have stated:

> Decisions in this state and in other jurisdictions have drawn a distinction between actions for abuse of legal process and those for malicious prosecution, which when founded on civil prosecutions, are usually described as malicious use of civil process. The gist of an action for abuse of process is the improper use of process after it has been issued, that is, a perversion of it "... An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it ...[.] On the other hand, legal process, civil or criminal, may be maliciously used so as to give

§ 8351 Wrongful use of civil proceedings

(a) Elements of action. A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required. The arrest or seizure of the person or property of the plaintiff shall not be a necessary element for an action brought pursuant to this subchapter.

The statute, on its face, requires that this proceeding terminate in favor of defendants before defendants' claim for wrongful use of civil proceedings is ripe for adjudication. Accordingly, defendants' second counterclaim will be dismissed.

### 4. *Statute of Limitations*

 Plaintiff asserts that defendants' counterclaims for defamation and intentional affliction of emotional distress

> rise to a cause of action where no object is contemplated ... other than its proper effect and execution" .... Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued. (Citations omitted).
>
> *Blumenfeld v. RM Shoemaker Co.*, 286 Pa.Super. 540, 543, 429 A.2d 654, 656, n. 3 (1981) (quoting *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 348–49, 32 A.2d 413, 415 (1943)). *See also Denenberg v. AM Family Corp. of Columbus, Ga.*, 566 F.Supp. 1242, 1247 n. 4 (E.D.Pa.1983). ("The action for wrongful use of civil proceedings was brought under Pennsylvania law, pursuant to 42 Pa.C.S.A. § 8351, which is a codification of the prior common law of malicious prosecution, or malicious use of process, with certain modifications.")

should be dismissed because they are time-barred by the relevant statutes of limitations. The statute of limitations defense may be raised by a motion to dismiss only if it appears from the face of the pleadings that the cause of action has not been commenced within the limitations period. *Bethel v. Jendoco Construction Corp.*, 570 F.2d 1168, 1174 (3d Cir.1978). In *Bethel*, the Third Circuit held that a motion to dismiss on the basis that the claim was time-barred could not be granted when the pleading alleged that the wrongful conduct that was the subject matter of the claim had continued "to the present". *Id.* at 1174. The court reasoned that this allegation was sufficient to overcome the statute of limitations when raised by a motion to dismiss.

Defendants have alleged that plaintiff's conduct constituting defamation and intentional infliction of emotional distress have continued up to the present. *Counterclaims* ¶¶ 73, 114. Therefore, under *Bethel*, plaintiff's motion to dismiss must be denied.