CENTENNIAL SCHOOL DISTRICT

v.

INDEPENDENCE BLUE CROSS; Medical Service Association of Pennsylvania, t/a Pennsylvania Blue Shield; Keystone Health Plans, Inc.; and Keystone Health Plan East, Inc., t/a Keystone Health Plan

v.

CENTENNIAL SCHOOL DISTRICT, Bradley S. Kirsch, Robert J. Fluehr, and Execucomp Insurance Services, Inc.

Civ. A. No. 93–3456.

United States District Court, E.D. Pennsylvania.

July 8, 1994.

Wayne M. Thomas, Joseph C. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA,

Allan D. Goulding, Jr., Curtin & Heefner, Morrisville, PA, for Centennial School Dist.

Marc J. Sonnenfeld, Morgan, Lewis & Bockius, Philadelphia, PA, Michael F. Clayton, Morgan, Lewis & Bockius, Washington, DC, for Independence Blue Cross, Medical Service Ass'n of Pennsylvania t/a Pennsylvania Blue Shield, Keystone Health Plans, Inc., Keystone Health Plan, East, Inc. t/a Keystone Health Plan.

Joseph C. Kohn, Kohn, Savett, Klein & Graf, P.C., Philadelphia, PA, Phillip B. Silverman, Harris & Silverman, Philadelphia, PA for Centennial School Dist.

Dennis J. O'Leary, White and Williams, Philadelphia, PA, Michael Brodie, Brodie, Rubinsky & Agre, Philadelphia, PA, Allan D. Goulding, Jr., Curtin & Heefner, Morrisville, PA, Phillip B. Silverman, Harris & Silverman, Philadelphia, PA, for Bradley S. Kirsch.

James M. Prahler, Margolis, Edelstein & Scherlis, Philadelphia, PA, for Robert J. Fluehr, Execucomp Ins. Services, Inc.

*MEMORANDUM*

PADOVA, District Judge.

Plaintiff–Counterclaim Defendant Centennial School District ("Centennial") and Counterclaim Defendant Bradley S. Kirsch (collectively, the "Counterclaim Defendants") have moved to dismiss the Amended Counterclaim filed by Defendants–Counterclaim Plaintiffs ("Counterclaim Plaintiffs") for lack of subject matter jurisdiction pursuant to 28 U.S.C. § 1367 and Federal Rule of Civil Procedure 13(a). In the alternative, they move to dismiss several of the counts for failure to state a claim upon which relief can be granted, or on the basis of immunity. In addition, Counterclaim Defendants have moved to strike portions of the Amended Counterclaim pursuant to Federal Rule of Civil Procedure 12(f), and for sanctions pursuant to Rule 11. For the following reasons, the motion will be granted in part and denied in part.

*Background*

Centennial filed suit alleging antitrust and state law claims against Defendants. Defendants–Counterclaim Plaintiffs have filed an Amended Counterclaim against Centennial, Kirsch, and non-moving Counterclaim Defendants Robert J. Fluehr and Execucomp Insurance Services, Inc., alleging defamation, disparagement, tortious interference with contractual and business relationships, tortious interference with prospective contractual and business relationships, conspiracy to tortiously interfere with prospective contractual and business relationships, and breach of contract.

## I. Subject Matter Jurisdiction

Under Federal Rule of Civil Procedure 13(a), "[a] pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Fed.R.Civ.P. 13(a). Courts have liberally construed what constitutes a "transaction or occurrence." *See, e.g., Linker v. Custom–Bilt Machinery Inc.*, 594 F.Supp. 894, 900 (E.D.Pa.1984) (holding that "defendants' counterclaim for defamation is based upon the identical securities transactions and conduct by the defendants allegedly supporting plaintiff's claims of fraud, misrepresentation, misconduct and breach of duty"). Similarly, the claims here relate to the contract between the parties and to comments made by defendants relating to the termination of that contractual relationship. The claims for breach of contract and conspiracy relate directly to the conduct surrounding the contract between the parties, the reasons for the termination of the contractual relationship, and the culpability of the parties in the relationship. The other claims flow directly from the alleged conduct of the parties. "Transaction or occurrence" should be interpreted broadly; it is unnecessary that the facts be from the same time or that exactly the same facts will resolve the issues in the complaint and the counterclaim. *See* Charles A. Wright, Arthur R. Miller, & Mary Kay Kane, *Federal Practice and Procedure: Civil* § 1410 (2d ed. 1990). Therefore, this Court has jurisdiction pursuant to 28 U.S.C. § 1367(a), because the claims share "a common nucleus of operative

fact." *United Mine Workers v. Gibbs,* 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). *See also Sinclair v. Soniform, Inc.,* 935 F.2d 599, 603 (3d Cir.1991); *Nanavati v. Burdette Tomlin Mem. Hosp.,* 857 F.2d 96, 105 (3d Cir.1988) (holding that supplementary jurisdiction existed because defendant's "slander claim is ancillary to [plaintiff's antitrust claim.... [Plaintiff's] discussions with the press as well as the substance of his allegations against [defendant] would constitute relevant facts for both sides"), *cert. denied,* 489 U.S. 1078, 109 S.Ct. 1528, 103 L.Ed.2d 834 (1989); *Linker,* 594 F.Supp. at 899. Following this reasoning, I find that the counterclaim arises from the same transaction or occurrence to come within the purview of Rule 13(a) and confer jurisdiction pursuant to 28 U.S.C. § 1367(a).

## II. Failure to State a Claim

■ Counterclaim Defendants also assert, pursuant to Federal Rule of Civil Procedure 12(b)(6), that the individual counts of the amended counterclaim fail to state a claim upon which relief can be granted.[1] In determining a motion to dismiss, all assertions in the pleading are assumed to be true; all reasonable inferences are drawn from the pleading in favor of the plaintiff; and the counterclaim only may be dismissed if the plaintiff has alleged no set of facts under which they could state a claim. *See, e.g., Kehr Packages, Inc. v. Fidelcor, Inc.,* 926 F.2d 1406, 1410 (3d Cir.), *cert. denied,* 501 U.S. 1222, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). I will examine each of the challenged counts in turn.

### A. Defamation (Count I)

■ Under Pennsylvania law, "[c]ounts alleging defamation should not be dismissed ... unless it is clear that the communication is incapable of defamatory meaning." *Petula v. Mellody,* 138 Pa.Cmwlth. 411, 588 A.2d 103, 108 (1991). The plaintiff must allege:

(1) the defamatory character of the communication;

(2) its publication by the defendant;

(3) its application to the plaintiff;

(4) the understanding by the recipient of its defamatory meaning;

(5) the understanding by the recipient of it as intended to be applied to the plaintiff;

(6) special harm resulting to the plaintiff from its publication; and

(7) abuse of a conditionally privileged occasion.

42 Pa.Cons.Stat.Ann. § 8343(a) (1982); *see also Elia v. Erie Ins. Exchange,* 430 Pa.Super. 384, 634 A.2d 657, 659 (1993).

■ The first determination for the court is whether the statements are capable of defamatory meaning. *See Weinstein v. Bullick,* 827 F.Supp. 1193, 1196 (E.D.Pa.1993). Although an expression of opinion generally is not actionable, such expression may be defamatory "if it implies an allegation of undisclosed defamatory facts as the basis therefor." *Petula,* 138 Pa.Cmwlth. 411, 588 A.2d at 108. Here, several of the challenged statements could be read to imply the existence of such undisclosed defamatory facts. For example, in the article printed in the *Intelligencer* on May 26, 1993, Counterclaim Defendant Kirsch is credited with stating that Blue Cross "wanted all those enrolled in the rival HMO to be 'turned over' to Keystone, for the same benefits at a higher price," and that Blue Cross' actions were "predatory." The editorial of May 30, 1993 repeats the "turned over" language, and the June 17, 1993 letter in the *Bucks County Courier Times* states that Counterclaim Plaintiffs engaged in "possibly illegal" conduct and "coercive tactics," and states that this is "what we learned" through analysis and investigation. These statements possibly go beyond the mere expression of opinion to imply the existence of undisclosed defamatory facts, and I conclude that the statements therefore are capable of defamatory meaning.

Counterclaim Plaintiffs also have alleged adequately that the statements were published (or caused to be published by the Counterclaim Defendants), that they applied to

---

[1]. The motion under Rule 12(b)(6) does not seek dismissal of Counts VI and VII, which allege breach of contract.

Counterclaim Plaintiffs, that recipients understood them to have defamatory meaning applicable to Counterclaim Plaintiffs, and that harm resulted. Therefore, the final issue to determine is that of abuse of a conditional privilege.

Even if the challenged statements are capable of defamatory meaning, the Counterclaim Defendants could prevail by demonstrating "(1) the truth of the defamatory communication; (2) the privileged character of the occasion on which it was published; and (3) the character of the subject matter of defamatory comment is of public concern." 42 Pa.Cons.Stat.Ann. § 8343(b) (1982). They cannot do so as a matter of law in the context of a motion to dismiss.

■ Counterclaim Defendants are entitled to a conditional privilege, which serves to protect speech that otherwise might be considered defamatory. "Examples of such occasions giving rise to conditional privileges are: (1) when some interest of the publisher of the defamatory matter is involved; (2) when some interest of the recipient of the matter, or a third party is involved; or (3) when a recognized interest of the public is involved." *Elia,* 634 A.2d at 660. *See also* Restatement (Second) of Torts § 593 (1977) (cited in *Chicarella v. Passant,* 343 Pa.Super. 330, 494 A.2d 1109, 1112–13 (1985)). Although the burden of establishing a privilege ordinarily rests with the defendant, "[w]here a conditional privilege is evidenced, as here, in the plaintiff's complaint, the plaintiff will be nonsuited unless he can prove abuse of the privilege." *Chicarella,* 494 A.2d at 1113. In this case, the conditional privilege is obvious from the face of the Amended Counterclaim: the allegedly defamatory statements concern health care insurance and the cost thereof, as well as relating to a lawsuit filed by a government entity. I therefore must determine whether the Amended Counterclaim alleges facts from which an abuse of the privilege may be drawn, and I find that it does.

"Abuse of a conditional privilege is indicated when the publication:

(1) is actuated by malice or negligence;

(2) is made for a purpose other than that for which the privilege is given;

(3) is made to a person not reasonably believed to be necessary for the accomplishment of the purpose of the privilege; or

(4) includes defamatory matter not reasonably believed to be necessary for the accomplishment of the purpose."

*Elia,* 634 A.2d at 661 (internal footnote and citation omitted).

Counterclaim Plaintiffs allege that the motivation for the comments was not to engage in public discourse regarding the American health insurance system but maliciously to destroy their reputation, and that the statements contained defamatory material not necessary for the dissemination of the information. Therefore, I find that Counterclaim Plaintiffs have alleged facts, which if proved, would defeat the conditional privilege to which Counterclaim Defendants are entitled.

B. Disparagement (Count II)

■ Count II alleges that the Counterclaim Defendants' statements "disparaged Blue Cross and the quality of its insurance products, [with the result that] the marketability of Blue Cross's products has been reduced; and Blue Cross has sustained direct pecuniary and other losses." Counterclaim ¶ 56. The Amended Counterclaim thus seeks compensatory and punitive damages.

"A commercially disparaging statement—in contrast to a defamatory statement—is one 'which is intended by its publisher to be understood or which is reasonably understood to cast doubt upon the existence or extent of another's property in land, chattels or intangible things, or upon their quality, ... if the matter is so understood by its recipient.' " *U.S. Healthcare v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 924 (3d Cir.) (quoting *Menefee v. Columbia Broadcasting Sys., Inc.,* 458 Pa. 46, 329 A.2d 216 (Pa.Super.Ct.1974)), *cert. denied,* 498 U.S. 816, 111 S.Ct. 58, 112 L.Ed.2d 33 (1990). In distinguishing disparagement from defamation, the Court of Appeals held that "[a]n action for commercial disparagement is meant to compensate a vendor for pecuniary loss suffered because statements attacking the quality of his goods have reduced their

marketability, while defamation is meant [to] protect an entity's interest in character and reputation." *Id.* Defamation, not disparagement, occurs where the publication "imputes to the corporation fraud, deceit, dishonesty, or reprehensible conduct in its business in relation to said goods or product." *Id.* (internal quotation omitted). Here, the statements go to the honesty and fairness of Blue Cross' pricing policies and dealings with others, but cannot be said to disparage the quality of the services themselves. Counterclaim Defendants never said that Blue Cross' services were inferior to those of other insurers, but instead criticized the marketing of those services. Because nothing in the statements serves to constitute disparagement as opposed to defamation, Count II will be dismissed.

**C. Tortious Interference with (Prospective) Contractual and Business Relationships (Counts III & IV)**

■ Counts III and IV of the Amended Counterclaim allege that Counterclaim Defendants' allegedly defamatory statements harmed the relationship between Counterclaim Plaintiffs and existing and potential contractual parties.

Tortious interference with contractual business relations is governed in Pennsylvania by the Restatement (Second) of Torts § 766 (1979):

> One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the third person's failure to perform the contract.

*Adler, Barish, Daniels, Levin and Creskoff v. Epstein,* 482 Pa. 416, 393 A.2d 1175 (1978), *cert. dismissed,* 442 U.S. 907, 99 S.Ct. 2817, 61 L.Ed.2d 272 (1979), *quoted in U.S. Healthcare v. Blue Cross of Greater Philadelphia,* 898 F.2d 914, 925 (3d Cir.1990).

Therefore, in order to state such a claim, a plaintiff must allege "(1) that the acts complained of were willful and intentional; (2) that they were calculated to cause damage to the plaintiff and its business; (3) that the acts were done with the unlawful purpose of causing damage and loss to the plaintiff without right or justifiable cause on the part of the defendant; and (4) that actual damage and loss resulted." *Advanced Power Systems v. Hi–Tech Systems,* 801 F.Supp. 1450, 1458 (E.D.Pa.1992) (quoting *Boyce v. Smith–Edwards–Dunlap Co.,* 398 Pa.Super. 345, 580 A.2d 1382, 1390 (1990)).

Similarly, an action for interference with prospective contractual relations is stated if the plaintiff can allege "(1) a prospective contractual relation; (2) the purpose or intent to harm the plaintiff by preventing the relation from occurring; (3) the absence of privilege or justification on the part of the defendant; and (4) the occasioning of actual damage resulting from the defendant's conduct." *U.S. Healthcare,* 898 F.2d at 925 (quoting *Thompson Coal Co. v. Pike Coal Co.,* 488 Pa. 198, 412 A.2d 466 (1979)).

Count III is fatally flawed. It fails to identify what contractual relationships were threatened, and does not even identify the *type* of contracts allegedly harmed by Counterclaim Defendants' conduct. If existing contracts were interfered with, Counterclaim Plaintiffs should be able to make some allegation regarding what contracts or types of contracts these were, and they have failed to do so. Count III will be dismissed.

However, prospective contractual relationships are by definition more difficult to identify precisely. *See SHV Coal, Inc. v. Continental Grain Co.,* 376 Pa.Super. 241, 545 A.2d 917 (1988), *rev'd on other grounds,* 526 Pa. 489, 587 A.2d 702 (1991). Counterclaim Plaintiffs have asserted that the allegedly defamatory statements caused them to lose prospective contracts. Viewing the allegations in the Amended Counterclaim in the context of a motion to dismiss, Counterclaim Plaintiffs adequately have stated a cause of action for interference with prospective contractual relations. Count IV will not be dismissed.

**D. Conspiracy (Count V)**

■ Next, the Amended Counterclaim alleges that Counterclaim Defendants "have

engaged in a conspiracy to inhibit Defendants [sic] in marketing either their preferred provider organization, Personal Choice, or their HMO, Keystone, to employees of the School District, even though to do so would not breach any existing contract between the School District and any other health maintenance organization currently offered by the School District to its employees." Amended Counterclaim ¶ 69.

The Pennsylvania Superior Court has held that:

> To state a cause of action for civil conspiracy under Pennsylvania law, a complaint must allege the existence of all elements necessary to such a cause of action. A cause of action for conspiracy requires that two or more persons combine or enter an agreement to commit an unlawful act or to do an otherwise lawful act by unlawful means. Proof of malice is an essential part of a cause of action for conspiracy.

*Burnside v. Abbott Labs.*, 351 Pa.Super. 264, 505 A.2d 973, 980 (1985) (internal citations omitted.)

■ Furthermore, Counterclaim Plaintiffs also must allege damage already caused by the alleged conspiracy. *See Cohen v. Pelagatti*, 364 Pa.Super. 573, 528 A.2d 657, 658 (1987). Future or speculative damages cannot give rise to a cause of action for conspiracy under Pennsylvania law. *See id.* Although the alleged conspiracy appears somewhat tenuous, Counterclaim Plaintiffs do allege conduct occurring between Kirsch and Centennial and Fluehr and Execucomp from which an agreement could be inferred. In the context of a Rule 12(b)(6) motion, it is not clear as a matter of law that the Counterclaim Defendants did not conspire to prevent marketing the HMO to the School District. Furthermore, they allege that damage already has occurred. Counterclaim Plaintiffs will be permitted the opportunity to develop this claim in discovery, and Count V will not be dismissed.

**2.** The Pennsylvania Supreme Court's decision in *Renk v. City of Pittsburgh*, 537 Pa. 68, 641 A.2d 289 (1994), does not alter this conclusion. The court in *Renk* specifically held that intentional torts may not constitute "willful misconduct"

### III. Immunity

In addition to arguing that this Court lacks subject matter jurisdiction and that Counterclaim Plaintiffs have failed to state a claim, Counterclaim Defendants Centennial and Kirsch argue that they are immune from the claims brought against them in Counts I through V. I will examine separately the contentions of Centennial and Kirsch.

### A. Centennial

■ Centennial argues that the Political Subdivision Tort Claims Act ("PSTCA"), 42 Pa.Cons.Stat.Ann. §§ 8541 *et seq.* (1982) renders it immune from liability from the counts asserted in the Amended Counterclaim. Leaving aside the procedural issue of whether immunity is properly asserted as the basis for a motion to dismiss, *see* Fed.R.Civ.P. 8(c), the PSTCA provides protection only against damages. The Counterclaim Plaintiffs assert in their brief that they do not seek money damages against Centennial on the tort claims. Mem. Op. at 14. The amended counterclaim does not specify what damages are sought from which parties. Therefore, Counterclaim–Plaintiffs' representation is accepted, and Centennial does not seek immunity where the tort claims do not seek money damages, but only equitable relief. On this record, then, immunity will be denied.

### B. Kirsch

■ Counterclaim Defendant Kirsch also seeks PSTCA immunity. PSTCA affords immunity to the negligent acts of local agency officials and employees, but does not extend to acts involving "actual malice or willful misconduct." 42 Pa.Cons.Stat.Ann. §§ 8545, 8550 (1982). Intentional torts may amount to "willful misconduct," [2] and under such allegations Kirsch is not immune as a local agency employee. In this connection, I accept the well-reasoned analysis of Judge Giles of this Court in concluding that immunity for intentional torts is abrogated by the PSTCA even if Kirsch is a "high public offi-

only in the context of police officers sued for assault and battery and false imprisonment. 641 A.2d at 293. In any event, the Amended Counterclaim contains sufficient allegations of actual malice to avoid immunity at this point.

cial." *See Weinstein,* 827 F.Supp. at 1206–10. Therefore, on this record Kirsch also is not entitled to immunity.

## IV. Motion to Strike Portions of the Amended Counterclaim

Counterclaim Defendants seek to strike paragraphs 10 through 22 of the Amended Counterclaim. Under Rule 12(f), the Court may order deleted from a pleading any "redundant, immaterial, impertinent, or scandalous matter." Such motions to strike are, however, "disfavored, especially in the absence of prejudice." *In re One Meridian Plaza Fire Litig.,* 820 F.Supp. 1460, 1488 (E.D.Pa.1993) (internal quotation omitted). Paragraphs 10 and 11 report the policies of the health care financing market. Paragraphs 12–14 describe the "social mission" of Blue Cross and Blue Shield. Paragraphs 15–18 describe the Counterclaim Plaintiffs' role in "medical underwriting." Paragraphs 19–20 discuss adverse selection, and paragraph 22 discusses the minimum participation requirement. Counterclaim Defendants argue that these paragraphs violate the short, plain statement requirement of Rule 8(a). Although the paragraphs go beyond what was necessary to state a claim, I do not agree that the contested paragraphs prejudice the movants, and the motion therefore will be denied.

## V. Motion for Sanctions

Counterclaim Defendants request sanctions pursuant to Federal Rule of Civil Procedure 11. The motion is perfunctory, the Amended Counterclaim was not brought in violation of the Rule, and I shall therefore deny the motion for sanctions.

### ORDER

AND NOW, this 8th day of July, 1994, upon consideration of the motion of Centennial School District and Bradley S. Kirsch to dismiss the Amended Counterclaim (Document No. 27) and the response thereto,

It is hereby ORDERED that the Motion is GRANTED IN PART AND DENIED IN PART. Counts II and III of the Amended Counterclaim are hereby DISMISSED. In all other respects, the Motion is DENIED.